PEOPLE v VAUGHN

Docket No. 97279. Argued April 7, 1994 (Calendar No. 11). Decided
    August 31, 1994. Rehearing denied *post,* 1202.
    Derrick T. Vaughn was convicted by a jury in the Genesee
    Circuit Court, Donald R. Freeman, J., of first-degree criminal
    sexual conduct and kidnapping and pleaded guilty of being an
    habitual offender, second offense. The Court of Appeals, REILLY
    and FITZGERALD, JJ. (GRIFFIN, P.J., dissenting), reversed, finding
    that the jury instructions were insufficient to convey that the
    asportation necessary for kidnapping could not be merely move-
    ment incidental to the commission of the criminal sexual
    conduct, resulting in manifest injustice (Docket No. 132045).
    The people appeal.

In separate opinions, the Supreme Court held the error by
the trial court in instructing the jury to be harmless, and
reversed the judgment of the Court of Appeals.

Justice BRICKLEY, joined by Justice MALLETT, stated that
although the trial court erred, because the instructional error
was harmless beyond a reasonable doubt, there was no actual
prejudice to the defendant.

Forcible-confinement kidnapping requires proof of asporta-
tion taken in furtherance of kidnapping and not merely move-
ment incidental to the commission of a coequal or lesser
underlying offense. It is error not to properly instruct regarding
this essential element of asportation or to instruct in such a
way that the jury may find the asportation element satisfied by
movement not incidental to kidnapping, but merely incidental
to commission of a coequal offense. A criminal defendant has a
statutory right to have a properly instructed jury consider the
evidence presented. The trial judge must instruct a jury regard-
ing the general features of a case, define the offense, and
explain what must be proven to establish that offense. Where
the instruction pertains to an essential element of the charged
offense, the duty to adequately instruct must be adhered to
even absent a request from counsel.

Jury instructions are reviewed as a whole rather than exam-
ined piecemeal to establish error. Even if somewhat imperfect,
there is no error if the instructions fairly present the issue to
be tried and sufficiently protect the defendant's rights. In this

case, the instruction given almost completely failed to explain that for purposes of forcible-confinement kidnapping, the essential element of asportation must be based on movement incidental to kidnapping and not merely movement incidental to the underlying offense of first-degree criminal sexual conduct. By giving an otherwise standard instruction that eliminated the only language adequately describing asportation, the trial judge effectively eradicated from the jury's consideration all guidance designed to assist it in properly assessing the asportation requirement. While not error per se, the expunged information was not replaced with clear or more accurate instructions, denying the defendant his right to have a properly instructed jury consider all of the evidence presented against him.

An erroneous instruction regarding an essential element of a criminal offense per se does not mandate a rule of reversal. Whether an instruction requires reversal depends on whether it was prejudicial. No verdict will be reversed on the ground of misdirection of the jury, unless, after an examination of the entire cause, it appears that the error resulted in a manifest injustice. In this case, because of the overwhelming and unrefuted record evidence indicating that most of the complainant's involuntary confinement and asportation was incidental to kidnapping, and not movement merely for purposes of committing first-degree criminal sexual conduct, no actual prejudice resulted from the instructional error. Further, the crime of forcible-confinement kidnapping both preceded and was complete well before the defendant duped the complainant into entering his motel room. The defendant's forcible confinement of the complainant in his vehicle was beyond a reasonable doubt incidental to the commission of kidnapping. No juror, properly instructed, could have concluded that the extended confinement was merely incidental to the commission of criminal sexual conduct. Because the defendant was not prejudiced by the erroneous jury instruction, the error was harmless.

Justice BOYLE, joined by Justices RILEY and GRIFFIN, concurring, stated that movement is a necessary element of forcible-confinement, false-imprisonment kidnapping, and the trial judge properly so instructed the jury. If such asportation was found on the facts presented in the instant case, however, there existed no reason for concern regarding the possibility of elevating a lesser offense to a capital crime or borrowing asportation incidental to another offense to satisfy that element of the kidnapping charge. The evidence of asportation presented at trial was so overwhelming that a finding by the jury of asporta-

tion for the purpose of kidnapping precluded concern that such movement was merely incidental to another offense.

Where, as in this case, the two crimes charged, forcible-confinement, false-imprisonment kidnapping and first-degree criminal sexual conduct, are coequal offenses, and it is beyond question that any movement proven was extensive and occurred well in advance of the commission of the criminal sexual conduct, the concerns that dictate the instruction that the jury find an asportation not merely incidental to an underlying crime are not present. The inclusion of the asportation element and incidental asportation rule in forcible-confinement, false-imprisonment kidnapping is to prevent the literal application of the kidnapping statute to sweep so broadly as to allow the improper elevation of lesser crimes to capital offenses and to guard against the use of movement incidental to another coequal offense, charged along with kidnapping, to fulfill the movement requirement of forcible-confinement kidnapping to improperly present two opportunities to convict the defendant of a capital offense instead of one.

Reversed.

Chief Justice CAVANAGH, concurring in part and dissenting in part, stated that on the basis of the special circumstances of this case, the error was harmless. It can be concluded that the jury necessarily found the uninstructed element of asportation in furtherance of the kidnapping and not merely incidental to the criminal sexual conduct. The standard to be applied in cases such as this is the analytical framework as Justice LEVIN describes in his dissent.

The imposition of separate punishments for both first-degree criminal sexual conduct by penetration involving the commission of another felony, and kidnapping, where kidnapping serves as the other felony, violates the constitutional prohibition against double jeopardy, specifically the prohibition against multiple punishments for the same offense.

Justice LEVIN, dissenting, stated that the failure to instruct on an essential element cannot be deemed harmless on the ground that a properly instructed jury surely would have found the uninstructed element. Even if such an instructional error could be considered harmless under some circumstances, the omission of the asportation instruction in this case was not harmless.

Application in this case of the view that a failure to instruct may be harmless if a reviewing court can determine that the jury actually found the element on which it was not instructed would not result in a finding of harmless error. Assuming that

the jury found all the elements necessary to establish the charge of first-degree criminal sexual conduct and all the elements of kidnapping except the asportation, it would not have had to find that the prosecution had proven the asportation element of kidnapping. Although the trial judge permitted the jurors to find that the asportation element was satisfied by movement that was not incidental to commission of first-degree criminal sexual conduct, the jury could have found that the asportation element of kidnapping was satisfied when the defendant caused the victim to be moved from his car into the motel room, or it could have found that the asportation element was satisfied when the defendant moved the victim from the floor to the bed in the motel room. Neither of these findings would establish the essential element of an asportation with independent significance. In sum, the findings that the jury must have made on the basis of the instructions that were given do not compel the conclusion that the jury must also have found an asportation of independent significance. The failure to instruct on the asportation element in this case cannot be considered harmless.

Even applying the view that an appellate court could find that a failure to instruct was harmless if it concluded that a properly instructed jury could not have reached a different verdict, the failure to instruct was not harmless in this case. The evidence of an asportation was not as strong as the evidence of the sexual assault. It is not clear that a jury, properly instructed under *People v Adams,* 389 Mich 222 (1973), would have convicted the defendant of kidnapping.

200 Mich App 611; 505 NW2d 41 (1993) reversed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Arthur A. Busch,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Research, Training and Appeals, for the people.

*Earl R. Spuhler* for the defendant.

BRICKLEY, J. This appeal requires us to determine whether, in a prosecution for kidnapping and first-degree criminal sexual conduct, the trial court erred in failing to adequately instruct the jury that asportation necessary for kidnapping must not be merely incidental to commission of the

underlying offense of first-degree criminal sexual conduct, and that reversal is required. While we would hold that the trial court did err, because the instructional error was harmless beyond a reasonable doubt, we find no actual prejudice to defendant and, accordingly, would reverse the decision of the Court of Appeals.

I

FACTS

On the evening of September 24, 1989, complainant and a friend met the defendant at a Flint tavern. At approximately 1:40 A.M., after sharing some drinks and dancing, defendant asked the complainant to accompany him to a local party store. Complainant agreed to the excursion and joined defendant in his car.

At the store, defendant purchased some alcohol and glasses. Returning to the car, he poured drinks for himself and complainant. After leaving the store, complainant gave defendant the address of a friend and asked to be dropped off at that location. Complainant also asked to be returned to the tavern. Disregarding these requests, defendant drove to a gas station. While defendant remained in the automobile, complainant tried to use an outside pay phone to call for a ride, but was too nervous to remember any phone numbers. Re-entering the automobile, complainant repeated her request to be dropped off either at her friend's home or at the tavern.

Again disregarding complainant's plea, defendant drove to a nearby parking lot, where he rolled a marijuana cigarette. After instructing complainant to take a "hit," defendant smoked some of the marijuana himself and then drove onto the I-69 expressway. After again asking to be

returned either to her friend's home or the tavern, defendant told complainant that he needed to visit a friend's home. Upon learning this, complainant opened the door and tried to flee the moving vehicle. Grabbing her arm, defendant pulled the complainant back into the vehicle, slammed the door shut, and struck complainant in the head.

After traveling along the expressway for approximately twenty minutes, defendant arrived at his friend's home and began changing the oil in his car. According to complainant, this task took approximately fifteen to twenty minutes. Upon completion, defendant returned to the vehicle where he grabbed the complainant and ripped off her coat and sweater. Complainant fled from the car and began running down the road. Defendant followed in his automobile, catching up with her at a home some blocks away. Defendant got out of the vehicle, ran to the complainant, and punched her twice in the head. Defendant then grabbed complainant by the arm, lifted her off the ground, and forced her back into the car.

Defendant now drove directly to a motel. Already having a key to the room, he did not check in at the main office. Defendant told complainant that she could use the telephone in the room, but, upon entering, she discovered that the room did not have a telephone. Recognizing that she had been tricked, she tried to leave, but defendant locked the door and would not let her depart.

Defendant instructed complainant to sit on the bed and to undress, which she did. Complainant struck the defendant with an ashtray, and he responded by striking her in the face, knocking her off the bed. Defendant then threw the complainant back onto the bed and raped her. Defendant later drove the complainant to a local school where he dropped her off. According to complain-

ant, defendant left her at the school just before
dawn, approximately between 5:00 and 6:00 A.M.

Defendant was charged with first-degree crimi-
nal sexual conduct, penetration occurring in con-
nection with the commission of a felony and with
the separate offense of kidnapping. The prosecutor
proceeded under theories of (1) actual forcible or
secret confinement, and (2) forcible confinement
with intent to secretly confine complainant or hold
her in service against her will. MCL 750.349; MSA
28.581; see also *People v Wesley,* 421 Mich 375,
383; 365 NW2d 692 (1984). After a lengthy jury
trial, at the close of evidence, both the prosecutor
and defense counsel submitted jury instructions to
the trial judge. Defendant's submission was based
on CJI2d 19.1, which the trial judge accepted.
After instructing the jury on both the kidnapping
and first-degree CSC charges, the trial judge in-
quired if counsel had any corrections or comments
pertaining to the instructions. Both the prosecutor
and defense counsel expressed agreement with the
instructions given. Defendant was subsequently
found guilty of both charges and, after pleading
guilty of being an habitual (second) offender, was
sentenced to concurrent forty- to sixty-year terms.

Defendant appealed and argued, inter alia, that
there was insufficient evidence of the asportation
element to support his convictions. Defendant did
not raise in the Court of Appeals his current
challenge of the jury instructions. Rejecting defen-
dant's sufficiency of the evidence claim, the Court
of Appeals concluded:

 [S]ufficient evidence was presented so that a
 rational jury could find beyond a reasonable doubt
 that the movement of the victim in this case was
 not "merely incidental" to the sexual assault. [200
 Mich App 611, 614; 505 NW2d 41 (1993).]

Notwithstanding this conclusion, the Court of Appeals went on to reverse defendant's separate kidnapping conviction because it deemed the trial court's jury instructions insufficient to convey the essential point that the asportation necessary for kidnapping could not be merely movement incidental to commission of the CSC. This failure to adequately inform the jury about an essential element of kidnapping, the Court of Appeals reasoned, resulted in manifest injustice and required reversal. *Id.* at 614-617.

Because this kidnapping had served as the underlying felony for defendant's CSC-I and habitual offender convictions, the Court of Appeals reversed the jury verdict on these counts as well.

On January 4, 1994, we granted the prosecutor's application to appeal. 444 Mich 913.

## II

### A

It is well established that forcible-confinement kidnapping requires proof of asportation taken in furtherance of kidnapping and not merely movement incidental to the commission of an underlying offense. *Wesley, supra* at 388.[1] This essential

---

[1] Specifically, forcible confinement kidnapping requires that the prosecutor prove four elements beyond a reasonable doubt:

    1) a forcible confinement of another within the state,

    2) done wilfully, maliciously and without lawful authority,

    3) against the will of the person confined or imprisoned, and

    4) an asportation of the victim which is not merely incidental to an underlying crime *unless* the crime involves murder, extortion or taking a hostage. Asportation incidental to these types of crimes is sufficient asportation for a kidnapping conviction. [*Wesley, supra* at 388. Emphasis in original.]

Defendant has not challenged the trial court's instructions on the first three elements, and our review of the record reveals that the instructions given regarding these elements were accurate.

element of asportation applies if the underlying offense is a coequal or lesser crime. See *People v Barker,* 411 Mich 291; 307 NW2d 61 (1981) (coequal offenses); *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973) (lesser offenses) (hereinafter *Adams I*). These rules pertaining to asportation have been incorporated into both the first and the second editions of the standard Criminal Jury Instructions. See CJI 19:1:01; CJI2d 19.1.

The importance of this distinction between asportation for kidnapping and movement incidental to an underlying offense cannot be overemphasized. As this Court explained in *Wesley,* because " 'virtually any assault, any battery, any rape, or any robbery involves some "intentional confinement," of the person of the victim,' " *Wesley, supra* at 385, quoting *People v Adams,* 34 Mich App 546, 560; 192 NW2d 19 (1971), a forcible confinement kidnapping charge may be used by the prosecutor to "elevate[ ] a common-law misdemeanor to an offense punishable by life imprisonment." 421 Mich 385. To avoid this potential problem, this Court has specifically demanded that the prosecution prove asportation unique to the commission of kidnapping. *Adams I, supra* at 237-238. This burden of proof, of course, means little if a jury is not informed of it. Accordingly, it is erroneous not to properly instruct regarding this essential element of asportation. Similarly, it is erroneous to instruct the jury in such a way that it may find the asportation element satisfied by movement not incidental to kidnapping but, instead, merely incidental to commission of a coequal offense such as first-degree csc. Such an instruction circumvents the express demands of *Adams I, Barker,* and *Wesley,* and exposes the kidnapping statute to potential charges of unconstitutionality. *Adams I, supra* at 237-238.

B

It is equally well established that the criminal defendant has a right to have a properly instructed jury consider the evidence presented against him. See, e.g., *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784 (1967); *People v Visel,* 275 Mich 77, 81; 265 NW 781 (1936). This prerogative emanates from a criminal defendant's right under the federal and state constitutions to a fair trial by jury,[2] and is entrusted, as an initial matter, to the able trial judges of this state, whose general duty to properly instruct is specifically mandated by MCL 768.29; MSA 28.1052:

> The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require.[3]

[2] Although defendant has not specifically argued that the instructions given here implicated constitutional protections, we recognize that under both Michigan and federal law the right to a jury determination on all essential elements of a criminal offense is a prerogative of constitutional import. See US Const, Ams VI, XIV; Const 1963, art 1, § 20. Accordingly, insofar as the instructions given here erroneously failed to advise the jury of the necessity for separate asportation, we acknowledge this oversight as generally raising an error of constitutional magnitude. This constitutional dimension, of course, distinguishes our holding today from this Court's recent enunciations in *People v Grant,* 445 Mich 535; 520 NW2d 123 (1994) (allegations of unpreserved *nonconstitutional* error), and *People v Anderson (After Remand),* 446 Mich 392; 521 NW2d 538 (1994) (allegations of preserved *nonconstitutional* error).

[3] This provision also explains that

> [t]he failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is *requested* by the accused. [Emphasis added.]

As explained below, see note 6 and the accompanying text, defense counsel expressly requested a standard jury instruction that included explanations that asportation must be incidental to forcible-confinement kidnapping and not merely to commission of csc. Accordingly,

Under the common law of this state, trial judges are responsible for insuring that cases are presented to juries in an intelligent manner so that the jurors have a clear and correct understanding of what it is they are to decide. See, e.g., *People v Martin*, 392 Mich 553, 562; 221 NW2d 336 (1974); *People v Townes*, 391 Mich 578, 587; 218 NW2d 136 (1974); *People v Allen*, 109 Mich App 147, 158-159; 311 NW2d 734 (1981). This responsibility demands that the trial judge instruct a jury regarding the general features of a case, define the offense, and explain what must be proven to establish that offense. *Liggett, supra* at 714. Where the instruction pertains to an essential element of the charged offense, the trial judge's duty to adequately instruct must be adhered to even absent a request from counsel. *Id.*[4] Failure to recognize these instructional responsibilities may demand reversal where an erroneous or misleading charge denies a criminal defendant the right to have a properly instructed jury consider the evidence. See *People v Petrella*, 424 Mich 221, 277; 380 NW2d 11 (1985); *People v Pepper*, 389 Mich 317, 322; 206 NW2d 439 (1973); *Visel, supra* at 81; *Liggett, supra* at 714; *People v MacPherson*, 323 Mich 438; 35 NW2d 376 (1949).

III

We agree with the Court of Appeals that the jury instructions given here were erroneous inso-

we note that this prerequisite of MCL 768.29; MSA 28.1052 has been satisfied by the defendant here.

[4] See also *People v Curry*, 58 Mich App 212; 227 NW2d 254 (1975) (the existence of asportation is a jury question that must be submitted even absent a request); *People v Ford*, 47 Mich App 420; 209 NW2d 507 (1973) (the failure to charge the jury on the element of asportation is error, even absent a request for such instruction); *People v Nash*, 47 Mich App 371; 209 NW2d 432 (1973) (the failure to request an appropriate instruction in a kidnapping case does not permit the trial judge to instruct the jury improperly).

far as they failed to adequately explain that forcible-confinement kidnapping demands asportation incidental to the kidnapping, and not movement merely incidental to commission of the coequal offense of first-degree csc.

A.

We first address appellant's argument that defendant's challenge to the jury instructions is not properly before this Court because defendant did not object to the instructions at trial. This Court has recently reaffirmed the general rule that "issues . . . not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances." *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). This general rule applies specifically to alleged instructional errors occurring at trial. See, e.g., *People v Van Dorsten*, 441 Mich 540, 544-545; 494 NW2d 737 (1993) (citing cases). Absent an objection to the instruction, appellate review and relief will only be granted when necessary to avoid manifest injustice to the defendant. See *Petrella, supra* at 276; *People v Woods,* 416 Mich 581, 610; 331 NW2d 707 (1982).

However, it is also well established in our jurisprudence that where an erroneous jury instruction pertains to an essential element of an offense, a contemporaneous objection to the instruction is *not* required to preserve the issue for appeal. See, e.g., *Liggett, supra* at 714 (failure to object or request a correct instruction pertaining to the identity of defendant); see also *Allen, supra* at 159; *People v Ashford,* 91 Mich App 693; 283 NW2d 830 (1979); *People v Price,* 21 Mich App 694, 697-698; 176 NW2d 426 (1970). Accordingly, while defendant admittedly failed to object to those instruc-

tions ultimately given by the trial judge, because defendant's present appeal goes directly to that portion of the jury instructions that pertain to asportation—i.e., an essential element of forcible-confinement kidnapping—his failure to object at trial does not preclude appellate review of the instructional issue raised here.[5]

B

At the conclusion of trial, defense counsel submitted and requested a standard criminal jury instruction for kidnapping.[6] Defendant's request was based on CJI2d 19.1, the model instruction for kidnapping where an underlying offense other than murder, extortion, or hostage-taking has also been charged. This standard jury instruction reads, in pertinent part, as follows:

Third, that while he was confining [name complainant], the defendant forcibly moved or caused [name complainant] to be moved from one place to another for the purpose of kidnapping. *If* [name complainant] *was moved as part of a crime other*

[5] That the alleged instructional error pertains to an *essential* element of the charged offense distinguishes this opinion from *Grant, supra.* The defendant in *Grant* failed to preserve an alleged instructional error by neither requesting proper instruction nor objecting at trial to the lack of an instruction. Notably, however, *Grant* did not involve alleged instructional error pertaining to an essential element of an offense but, instead, dealt with a statutory requirement for preliminary instruction on a *defense.* Because the instructional error in *Grant* did not concern an essential element, it fell within the general rule demanding preservation of issues for appeal. Conversely, the instructional error alleged here *does* relate to an essential element of the charged offense and has long been recognized under Michigan law as unique and commanding an exception to the general rule requiring preservation.

[6] Defense counsel originally submitted instructions based on the first edition of the Criminal Jury Instructions, specifically CJI 19:1:01. Defense counsel subsequently amended this request, on the record, to incorporate the second edition instruction (CJI2d 19.1) into a new request that he then gave to, and that was accepted by, the trial judge.

*than kidnapping, this is not enough.* In this case,
for instance, you should consider whether [name
complainant] was moved for the purpose of kidnap-
ping or as part of the crime of _____. In
determining whether [name complainant] was
moved for the purpose of kidnapping, you may
consider how far [name complainant] was moved
and whether being moved added any greater dan-
ger or threat to [name complainant] than the
crime of _____. [Name complainant] *must
have been moved for the purpose of kidnapping
and this movement must have been independent of
the other crime.* [CJI2d 19.1(4). Emphasis added.]

Accepting this proffered instruction, the trial
judge instructed the jurors regarding the penetra-
tion-related elements of CSC and accurately ex-
plained the requirement that sexual penetration
be shown to have occurred in connection with the
commission of a kidnapping. The trial judge then
gave a simple description of kidnapping,[7] and con-
cluded with the following specific instructions on
the elements of kidnapping as a separate offense:

These are the elements the prosecution must
prove beyond a reasonable doubt: First, that the
victim as described here must have been forcibly
confined or imprisoned; second, the victim must
have been so confined or imprisoned against her
will and without lawful authority; next, during the
course of such confinement the defendant must
have forcibly moved or caused the victim to be

---

[7] [*The Court.*] Now, with respect to [kidnapping], I'm going to
explain what kidnapping means. It says in our statute with
respect to kidnapping: Any person who shall wrongfully, inten-
tionally and forcibly confine another person against her will
and move her from one place to another or cause her to be
moved from one place to another is guilty of the crime. That's
the basic element of kidnapping.

All of these elements must be established by the prosecution
with respect to the charges as placed against the defendant.

moved from one place to another for the purpose of abduction and kidnapping.

In determining whether or not the movement was for the purpose of kidnapping, you may consider whether the movement was for a few feet or for a substantial distance, that at the time of the confinement the defendant must have intended to kidnap the victim; next, at the time of the confinement the defendant must have been acting willfully and maliciously, willfully and maliciously meaning the defendant intentionally confined the victim knowing such confinement to be wrong, and that he did so without legal justification or excuse.[8]

---

[8] It is clear from both the organization and content of this instruction that the trial judge based his directions to the jury not on CJI2d 19.1 but, instead, on CJI 19:1:01, a precursor of CJI2d 19.1, which reads as follows:

(1) The defendant is charged with the crime of kidnapping. Any person who shall wrongfully, intentionally and forcibly confine another person against his or her will and move him or her from one place to another or cause him or her to be moved from one place to another is guilty of this crime. The defendant pleads not guilty to this charge. To establish this charge the prosecution must prove each of the following elements beyond a reasonable doubt.

(2) First, the victim, _____, must have been forcibly confined or imprisoned.

(3) Second, the victim must have been so confined or imprisoned against his or her will and without lawful authority.

(4) Third, during the course of such confinement the defendant must have forcibly moved or caused the victim to be moved from one place to another for the purpose of abduction and kidnapping. *Such movement is not sufficient if it is part of a crime other than kidnapping. In this case, for instance, you should consider whether the movement was for the purpose of kidnapping or whether it was a part of the crime of* _____ [or crimes of _____ and _____].

(5) In determining whether or not the movement was for the purpose of kidnapping, you may consider whether the movement was for a few feet or for a substantial distance, and whether it added any greater danger or threat to the victim than the crime of _____. *However, the evidence must convince you beyond a reasonable doubt that there was movement independent of the other crime and that it was for the purpose of kidnapping.*

(6) Fourth, at the time of such confinement the defendant must have intended to kidnap the victim.

Jury instructions are reviewed as a whole rather than examined piecemeal to establish error. *People v Watkins*, 178 Mich App 439, 450; 444 NW2d 201 (1989), rev'd on other grounds 438 Mich 627; 475 NW2d 727 (1991). Even if somewhat imperfect, there is no error if the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights. *Id.*

In this case, the instruction given almost completely failed to introduce or explain that, for purposes of forcible-confinement kidnapping, the essential element of asportation must be based on movement incidental to kidnapping and not merely movement incidental to the underlying offense of first-degree CSC. While the trial judge's instructions were ostensibly based on a standard criminal jury instruction for kidnapping and an underlying offense,[9] they in fact omitted the following fundamental language referring to the distinction between asportation incidental to kidnapping versus movement incidental to the underlying offense:

*Eliminated* from CJI 19:1:01 (the instruction actually used):

(4) . . . Such movement is not sufficient if it is

---

(7) Fifth, at the time of such confinement the defendant must have been acting wilfully and maliciously. Wilfully and maliciously means that the defendant intentionally confined the victim, knowing such confinement to be wrong, and that [he/ she] did so without legal justification or excuse. [CJI 19:1:01. Emphasis added.]

The emphasized sections note those instructions *not* included in the trial court's actual instruction to the jury in this case. See also *infra* at 232-233.

Irrespective of which standardized instruction the trial judge utilized, however, for the reasons detailed herein, the instruction actually given erroneously failed to explain the essential distinction between asportation incidental to kidnapping, and movement merely for the commission of first-degree CSC.

[9] See n 8.

part of a crime other than kidnapping. In this case, for instance, you should consider whether the movement was for the purpose of kidnapping or whether it was a part of the crime of _____ [or crimes of _____ and _____].

(5) . . . However, the evidence must convince you beyond a reasonable doubt that there was movement independent of the other crime and that it was for the purpose of kidnapping.

*Eliminated* from CJI2d 19.1 (the instruction requested by defense counsel):

Third . . . [i]f [name complainant] was moved as part of a crime other than kidnapping, this is not enough. In this case, for instance, you should consider whether [name complainant] was moved for the purpose of kidnapping or as part of the crime of· _____ . . . . [Name complainant] must have been moved for the purpose of kidnapping and this movement must have been independent of the other crime.

These are the only direct references in CJI and CJI2d to the essential distinction between asportation incidental to kidnapping versus movement incidental to the underlying offense. Importantly, the remaining two instructions concerning asportation[10] only identify the necessity of asportation intended for kidnapping; *these instructions do not explain to the jury that this asportation must not be merely incidental to commission of the underlying offense.*

Jury instructions must fairly and adequately

---

[10] Namely, that "during the course of such confinement the defendant must have forcibly moved or caused the victim to be moved from one place to another for the purpose of abduction and kidnapping," CJI 19:1:01(4), and that "at the time of such confinement the defendant must have intended to kidnap the victim." CJI 19:1:01(6); see also the trial judge's actual instructions to jury.

apprise the jury of those elements that must be proven. in a criminal case. Asportation is an essential element of a forcible-confinement kidnapping charge, *Wesley, supra* at 388, and, accordingly, was also a central issue in the instant criminal action. By giving an otherwise standard instruction that eliminated the only language adequately describing asportation, the trial judge effectively eradicated from jury consideration *all* guidance designed to assist the jury in properly assessing the asportation requirement. Notably, while these deletions were not error per se,[11] the trial judge did not replace the expunged information with clear or more accurate instructions and, in fact, gave no substitute instructions regarding asportation.

The practical consequence of the instructions given here was that the jurors did not have a "clear and correct understanding of what it is they are to decide." See, e.g., *Martin, supra* at 562. Specifically, it was never explained to the jurors that they had to find asportation incidental to kidnapping and not movement merely incidental to the commission of CSC. By failing to make clear this distinction, the trial judge in effect permitted jurors to find the asportation element satisfied by movement merely incidental to the commission of CSC. This instruction was incomplete and misleading, and did not adequately explain what must be proven to establish the offense of kidnapping. *Liggett, supra* at 714; *Barker, supra* at 301.[12] By failing to adequately instruct on this essential

---

[11] See n 13.

[12] We note, however, that with respect to the remainder of the instructions given by the trial judge there is no allegation of error, nor does our review of the record indicate that any error occurred. Therefore, with the exception of the instructional fault detailed herein, the instructions actually given were fair and accurate in all other respects.

element of kidnapping, the trial judge denied defendant his right to have a properly instructed jury consider all the evidence presented against him. *Liggett, supra* at 714; *Visel, supra* at 81.[13]

## IV

While we agree with the Court of Appeals that the failure to properly instruct on asportation was error, and that it was not forfeited, the question remains whether this error resulted in prejudice to defendant to the extent that a miscarriage of justice occurred requiring reversal. We turn now to this dispositive issue.

## A

This Court first explained in *Woods, supra,* that an erroneous instruction regarding an essential element of a criminal offense per se does not mandate a rule of reversal. Specifically, we held:

A per se harmless error rule cannot be justified by quoting the general rule from cases such as

[13] We emphasize to the bench and bar that our ruling is *not* a demand that the standard jury instructions be literally adhered to in any given case. The Michigan Criminal Jury Instructions do not have the official sanction of this Court, *Petrella, supra,* and their use is not mandatory but, instead, remains discretionary with the capable trial judges of this state. *Id.* Nothing in this opinion should be interpreted as limiting in any way the proper exercise of judicial discretion when instructing a jury. Trial judges remain free to use all or part of those standardized instructions that they deem proper for adequately instructing a jury, and should not hesitate to modify or disregard a standard instruction when presented with a clear or more accurate instruction. *Id.; People v Dykhouse,* 418 Mich 488; 345 NW2d 150 (1984).

In short, it was not error per se for the trial judge here to delete the aforementioned standardized instructions pertaining to incidental asportation. However, because the actual instructions did not properly inform the jury of its duty to find asportation not merely incidental to the commission of csc, in this limited but important respect the instructions were misleading and erroneous.

*People v Visel,* 275 Mich 77, 81; 265 NW 781 (1936), that a "[d]efendant has a right to have a [properly instructed] jury pass upon the evidence." *Whether an instruction is reversible depends on whether it was prejudicial,* and no reasoning or case law suggests that we should now discard that sound approach. [*Id.* at 600-601. Emphasis added.][14]

This emphasis on actual prejudice derives directly from Michigan's "harmless error" statute, which provides in pertinent part:

No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, *on the ground of misdirection of the jury* . . . unless in the opinion of the court, *after an examination of the entire cause,* it shall affirmatively appear that the error complained of *has resulted in a miscarriage of justice.* [MCL 769.26; MSA 28.1096. Emphasis added.][15]

---

[14] See also *People v Thinel,* 429 Mich 859, 859-860; 412 NW2d 923 (1987) ("An instruction that removes from the jury the right to consider freely an element of the crime can be a harmless error").

[15] A "prejudice" standard for constitutional harmless error analysis finds considerable support in past and recent case law from this Court. See *Woods, supra* at 600 ("The circumstances of |two prior cases| were examined to determine if the erroneous instructions were on elements *essential* to those cases, i.e., was the instruction *prejudicial* to that defendant? Thus, the traditional harmless error analysis was applied") (emphasis added and in original); *People v Robinson,* 386 Mich 551, 562; 194 NW2d 709 (1972) (explaining that the "manifest injustice" requirement is simply a requirement for showing prejudice, articulating two-pronged test for harmless error); *People v Nichols,* 341 Mich 311, 332; 67 NW2d 230 (1954) ("the rule always in effect in Michigan . . . has been and is that the question of reversal is controlled by determination of whether the error was prejudicial").

Recently, this Court recognized that the *Robinson* two-part inquiry is strikingly similar to the federal constitutional test announced in *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967), and *Arizona v Fulminante,* 499 US 279; 111 S Ct 1246; 113 L Ed 2d 302 (1991), but determined that the test applies to constitutional, not nonconstitutional, errors. Having carefully considered this multitude of Michigan case law, we believe our articulation of harmless error herein to be manifestly consistent with these prior decisions.

Relying on our decision in *Wesley,* the Court of Appeals concluded that—despite the existence of evidence sufficient for a rational jury to find the movement of complainant not "merely incidental" to the commission of csc—the instructional error here created manifest injustice requiring reversal. 200 Mich App 617. By neglecting any analysis of prejudice or harmless error, the Court of Appeals in effect created a rule of reversal per se for the instructional error that occurred here. Notably, however, this Court has recently reaffirmed the "harmless error" approach taken in *Woods* and MCL 769.26; MSA 28.1096, and rejected an automatic reversal rule for erroneous jury instructions on nonessential elements. Specifically, in *Grant, supra,* we explained that

> the failure to give a preliminary instruction on insanity does not require automatic reversal for several reasons. First, automatic reversal would come into direct conflict with MCL 769.26; MSA 28.1096, which orders that judgments or verdicts shall not be reversed absent a miscarriage of justice. . . . Second, other important concerns *such as proper final instructions to the jury are the subject of harmless-error analysis and are therefore not susceptible to automatic reversal.* Absent a clear legislative directive, we cannot consider the preliminary jury instruction involved here to avoid the more generalized requirement that no judgment or verdict may be reversed absent a miscarriage of justice. [*Id.* at 543. Emphasis added.][16]

We would reaffirm the general approach to in-

[16] Again, we recognize that the instant case is markedly different from *Grant, supra,* and *Anderson, supra,* insofar as it involves an error with constitutional implications that is not subject to traditional preservation requirements. Nevertheless, we note that a "prejudice" standard for harmless error is well established in Michigan law for assessing instructional infirmities pertaining to an essential element of a criminal offense. Like the Court in *Woods,* we see "no reasoning

structional error articulated in MCL 769.26; MSA
28.1096, *Woods,* and *Grant,* and would reject an
automatic reversal rule for erroneous jury instruc-
tions regarding an essential element of a criminal
offense. Specifically, we reiterate that erroneous
jury instructions regarding essential elements may
be reviewed for harmless error by utilizing a "prej-
udice" standard. In the context of an erroneous
jury instruction on an essential element, this stan-
dard demands that the court assess whether the
jury, properly instructed, could have reached a
different verdict had the error not occurred.[17]

or case law [to] suggest . . . that we should now discard that sound
approach." *Woods, supra* at 601. Because a rule of automatic reversal
is antithetical to this admittedly "sound approach," like the Court in
*Grant* we find significant merit for rejecting it here.

[17] Insofar as the instructional error here violated defendant's fed-
eral constitutional rights, see n 2, we note that our harmless error
standard for constitutional error squares with that approach taken by
our brethren in the federal courts. As this Court recently explained in
*Anderson,* n 2 *supra* at 404-407, the United States Supreme Court
has enunciated a two-part harmless error inquiry for constitutional
infirmities. This test is discussed below.

Under *Arizona v Fulminante,* n 15 *supra,* a court must first
determine whether a harmless error analysis is even applicable to the
constitutional violation. In this regard, the *Fulminante* Court has
distinguished between "trial errors" and "structural errors." Trial
errors, involve "error which occurred during the presentation of the
case to the jury, and which may therefore be quantitatively assessed
in the context of other evidence presented in order to determine
whether its admission was harmless beyond a reasonable doubt." *Id.*
at 307-308. Conversely, structural errors "are structural defects in the
constitution of the trial mechanism, which defy analysis by 'harmless-
error' standards." *Id.* at 309. The key point, for purposes of the
instant case, is that constitutionally-infirm instructional error was
categorized in *Fulminante* as generally being "trial error" subject to
harmless-error analysis.

Notably, this categorization is consistent with other United States
Supreme Court cases addressing instructional error. See *Sullivan v
Louisiana,* 508 US —; 113 S Ct 2078; 124 L Ed 2d 182, 190 (1993) (an
erroneous "reasonable doubt" instruction demanded reversal because
instruction implicated the entire jury verdict; however, the Court
affirmed *Rose v Clark,* 478 US 570, 579; 106 S Ct 3101; 92 L Ed 2d 460
[1986], and intimated that jury instructions generally remain subject
to harmless-error analysis as "trial errors"); *Pope v Illinois,* 481 US
497, 503; 107 S Ct 1918; 95 L Ed 2d 439 (1987) (the Court concluded
that "if a reviewing court concludes that no rational juror, if properly

Turning now to the facts of this case, we conclude that because of the overwhelming and unrefuted record evidence indicating that most of complainant's involuntary confinement and asportation was incidental to kidnapping, and not movement merely for purposes of committing first-degree CSC, no actual prejudice resulted from the instructional error that occurred here. Accordingly, we would hold that the error was harmless.[18]

---

instructed, could [conclude otherwise], the convictions should stand"); *Rose, supra* at 579 (the Court concluded that while a jury instruction was unconstitutional, in absence of error rendering trial fundamentally unfair—such as the denial of the right to counsel or trial before a financially interested judge—the conviction should be affirmed "[w]here a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt"). See also *Chapman v California,* n 15 *supra* (general proposition that constitutional errors do not automatically require reversal of a conviction).

Second, and assuming that the infirmity is a "trial error" subject to harmless-error analysis, the beneficiary of this error must prove "beyond a reasonable doubt that there is no ' "reasonable possibility that the evidence complained of might have contributed to the conviction." ' " *Anderson,* n 2 *supra* at 406 (quoting *Chapman,* n 15 *supra* at 23).

[18] The concurring opinion explains that "[i]f the facts, as alleged, are found by the jury to have occurred beyond a reasonable doubt, the movement is, as a matter of law, not merely incidental to a separate, coequal charge of forcible-confinement, false-imprisonment kidnapping." *Post* at 247. From this premise, the opinion ultimately concludes that—because the jury found asportation facts sufficient to support a kidnapping conviction—it was not error to exclude those instructions that directed the jury to find this asportation independent of any movement incidental to commission of CSC. I disagree.

The rationale upon which this concurring opinion proceeds—i.e., juror factfinding on asportation sufficient to convict of kidnapping—is an approach based fundamentally on *postinstruction* jury proceedings. While under the microscope of retrospective analysis it may accurately be said that the jury found facts sufficient for conviction, and that it properly applied these facts to reach a kidnapping conviction, it is certainly accurate that the deliberative process that resulted in both the facts and the verdict is one significantly directed by jury instructions. Facts are neither deduced nor applied in a vacuum. The deliberative process of a jury sails fundamentally with the winds of a trial judge's instructions. To say, therefore, that a jury's ultimate factual conclusions justify a prior instructional decision ignores the simple truth that the jury's findings may have been prejudicially affected *by that decision.* The end does not justify the means. Facts and verdicts procured under the spectre of prior instructional error

B

While complainant initially agreed to accompany defendant for a short trip to a nearby store, the extent of her consent was expressly limited to this brief excursion. Upon his return from the store, complainant made clear to defendant that she no longer wished to accompany him. On numerous occasions thereafter complainant asked defendant to take her to a friend's home or, alternatively, to return her to the tavern. Defendant refused or ignored each of these requests. Further, complainant tried to telephone for an alternate ride and, on at least two occasions, attempted to physically escape only to be forcibly and violently returned by defendant to the automobile. While the record is not precisely clear on duration and

cannot be, and should not be, later inverted to sanction that error. Such an intrinsically circular approach is taken by the concurring opinion.

Seldom are the implications of instructional error more *potentially* prejudicial than in those cases in which the prosecutor proceeds under the approach utilized in the instant case. Here, the prosecutor charged defendant with both kidnapping and CSC. Kidnapping was used to elevate the second charge to CSC-I. To convict under both counts, the prosecutor had to *first* prove kidnapping; without a valid kidnapping conviction, CSC-I was legally impossible. While the charges are therefore separate, the factual basis and legal conclusions for the first (kidnapping) must have been deduced before the second (CSC-I) could even be considered.

Potential difficulties arise, however, where the kidnapping and CSC charges are based inextricably on a continuous set of facts. If a jury must find kidnapping as a prerequisite to convicting of CSC-I, it must also be instructed to first separate out from the collective offense those facts necessary for a preliminary kidnapping analysis. The necessity for distinct fact finding and analysis is conveyed to a jury via instructions such as CJI 19:1:01 and CJI2d 19.1. Such instructions inform the jury to not "mix" facts when arriving at a kidnapping determination—to separate any asportation incidental to the CSC, and only consider that movement incidental to kidnapping. Lack of such an instruction, even on "clear" facts such as these, permits jurors to mix their analysis for determinations, which, by definition, must otherwise be kept separate. In effect, the jury is permitted to do that which the *Adams* Court sought to prevent prosecutors from accomplishing: convicting defendants for two offenses in cases in which the facts only support one.

distance, it does appear that complainant was involuntarily and forcibly confined to defendant's vehicle for a period approximating between one and two hours and for a distance covering many miles.

Similarly, the facts establish that, before forcibly taking complainant to the motel where he eventually raped her, defendant drove complainant to a gas station, to a parking lot, and to a friend's home for purposes of changing the oil in his car. During this time, defendant consumed both alcohol and marijuana, fraying his senses to such a degree that, according to complainant, he almost struck a telephone pole with his automobile.

From these facts, we derive two conclusions. First, given the nature and duration of complainant's forcible confinement in defendant's automobile, no properly instructed juror in this case could have interpreted the facts as indicating asportation merely incidental to first-degree csc. Defendant's various stops at a gas station, a parking lot, and a friend's home—all *before* moving complainant to the motel where the rape eventually occurred—clearly deviated from any sort of asportation that, on the facts here, could be considered necessary or only incidental to the commission of first-degree csc.[19] Further, defendant cer-

[19] At least three foreign courts have considered a defendant's superfluous movement of a csc victim as one factor to be considered in determining if a kidnapping conviction is valid. See, e.g., *United States v Peden,* 961 F2d 517 (CA 5, 1992) (the defendant's asportation of the victim away from the area where they initially met, and subsequent detention of the victim for half an hour, went beyond that necessarily inherent in rape and supported the kidnapping conviction); *Daniels v State,* 274 Ind 29; 408 NE2d 1244 (1980) (a separate kidnapping conviction was proper where the defendant drove the rape victim around back roads without her consent and where the victim finally had to escape by jumping from the vehicle); *State v Newman,* 326 NW2d 788 (Iowa, 1982) (the kidnapping conviction was valid where the defendant transported the victim several miles to various places, used physical force on at least two occasions to thwart escape

tainly did *not* have to confine complainant in his automobile for approximately one to two hours and many miles in order to later execute this heinous rape in a local motel room.[20]

In fact, had defendant intended to confine and move complainant solely for the purposes of committing rape, he could have driven directly to the motel. Complainant's forcible confinement to defendant's vehicle *was* asportation incidental exclusively to kidnapping, and no juror examining this

efforts, and threatened the victim before actually raping her). These cases are cited for purposes of illustration only. Nothing in this citation shall be construed as indicating that this Court has adopted the findings—asportation or otherwise—of these foreign courts.

[20] Numerous foreign courts have considered the distance and duration of a CSC victim as one factor to be considered in determining if a kidnapping conviction is valid. See, e.g., *State v Perry*, 116 Ariz App 40; 567 P2d 786 (1977) (the record supported the conviction of armed rape and armed kidnapping where the defendant refused to let the complainant out of his car and drove her out of town before committing rape); *People v Neal*, 37 Ill App 3d 713; 346 NE2d 178 (1976) (the kidnapping conviction was proper where the victim was forcibly confined to the automobile for two and one-half hours before being raped); *People v Henderson*, 36 Ill App 3d 355; 344 NE2d 239 (1976) (a separate kidnapping conviction was valid where the victim was confined in a vehicle for at least an hour); *People v D'Angelo*, 166 AD2d 662; 561 NYS2d 83 (1990) (the kidnapping and rape convictions were proper where the defendants drove the victim for several hours before committing rape); *State v Williams*, 308 NC 339; 302 SE2d 441 (1983) (a separate conviction for kidnapping was proper where the defendant restrained the victim for several hours in her home before committing rape); *State v Swaggerty*, 15 Or App 343; 515 P2d 952 (1973) (the asportation was sufficiently extensive to support kidnapping where the defendant drove away with the victim, later returned and changed vehicles, and drove to two motels before committing rape); *State v Taylor*, 562 A2d 445 (RI, 1989) (where the defendant removed the child from her home and asportated the victim several houses away, prosecution for kidnapping and sexual assault was proper because the movement was more than otherwise necessary to commit sexual assault); *State v St Cloud*, 465 NW2d 177 (SD, 1991) (the prosecution for both rape and kidnapping was proper where the defendant forced the victim to drive five miles to an isolated area before raping her); *State v Trail*, 174 W Va 656; 328 SE2d 671 (1985) (the defendant could be convicted of both kidnapping and rape where he led the victim three miles into the woods before raping her). Again, these cases are cited for purposes of illustration only. Nothing herein shall be construed as indicating that this Court has adopted the findings—asportation or otherwise—of these foreign courts.

record evidence against the backdrop of proper instructions on asportation could have concluded otherwise.[21]

Second, defendant's extended asportation of complainant added greater dangers, both actual and threatened, beyond those inherent to a criminal sexual assault. Defendant's consumption of alcohol and marijuana while operating his vehicle on local roads and a highway significantly increased the likelihood that complainant, and perhaps others, would be involved in a traffic accident. Further, by driving complainant away from alternative crime locations where observation by others was more likely (i.e., the party store, the gas station, the parking lot, and his friend's home), and to an isolated motel room where the probability of detection was remote and where isolation substantially increased the risk of harm to complainant if she tried to defend herself or escape, defendant placed

[21] Again, we note that our harmless error standard, and the conclusion it necessitates here, are consistent with federal court precedent. See *Rose,* n 17 *supra, Pope,* n 17 *supra.* Like the United States Supreme Court in *Fulminante,* n 15 *supra,* and *Sullivan,* n 17 *supra,* we appraise the instructional error that occurred here to be a "trial error" susceptible to harmless-error analysis. However, unlike the instructional error in *Sullivan,* which involved the decision-making process of the jury generally and, accordingly, which invalidated all its findings and conclusions, the erroneous instruction given here simply involved an element of the criminal offense. Therefore, the erroneous lack of instruction given in this case says little or nothing about the jury's factfinding or deliberative processes generally. See *Sullivan,* n 17 *supra,* 124 L Ed 2d 190.

Further, and as alluded to by the Court in *Sullivan,* the error that occurred here was more akin to that challenged in *Rose,* n 17 *supra.* While the jury in *Rose* was erroneously instructed to presume malice from predicate facts, it still had to find the existence of those underlying facts beyond a reasonable doubt. *Sullivan,* n 17 *supra,* 124 L Ed 2d 190. Similarly, to find defendant guilty of kidnapping, the jury in this case had to (and did) conclude that some fact of asportation had actually taken place. The finding of this predicate fact (asportation generally) is, *given the unique facts of this case,* so closely linked to the ultimate fact (separate asportation) that the jury's finding of asportation is, we believe, the "functional equivalent" of a finding of separate asportation. *Id.*

complainant in greater danger than she otherwise would have been had the crime occurred elsewhere.[22] In short, defendant's irresponsible actions incidental to this kidnapping substantially increased the risk of harm to complainant beyond that otherwise incidental to the rape.[23] The exis-

[22] At least four foreign decisions have considered the effect that a defendant's actions had upon the level of danger to which a csc victim was exposed. See also *People v Hunter,* 19 Cal App 3d 336; 97 Cal Rptr 29 (1971) (the asportation of the victim approximately three miles in an automobile subjected the victim to a greater risk of harm than that normally incident in rape or robbery); *People v Powell,* 716 P2d 1096 (Colo, 1986) (asportation in a vehicle, before rape, substantially increased the risk of harm to the victim); *State v Tucker,* 317 NC 532; 346 SE2d 417 (1986) (conviction for kidnapping is proper where the defendant's asportation of the victim away from vehicle and for some distance before sexual assault had the effect of ensuring that the passersby would not witness or hinder in the commission of rape and thus increased the danger to the victim beyond that normal in a sexual assault); *State v Whittington,* 318 NC 114; 347 SE2d 403 (1986) (same conclusion). These cases are cited for illustration only. Their citation shall not be construed as indicating that this Court has adopted the findings—asportation or otherwise—of these foreign courts.

[23] Various foreign decisions have considered how a defendant's actions in removing a csc victim to a place of greater isolation increased the risk of harm beyond that normally incident to csc. See, e.g., *Yescas v People,* 197 Colo 379; 593 P2d 358 (1979) (asportation from a public building to concealed privacy of hedges and trees twenty feet away, coupled with striking the victim in the face, substantially increased the risk of harm to the victim such as to support a separate kidnapping conviction); *Beck v United States,* 402 A2d 418 (DC App, 1979) (a separate kidnapping conviction was proper where the asportation into a private home lessened the likelihood of interference by passersby or neighbors, thus increasing the risk of harm beyond that normal to rape); *Bush v State,* 526 So 2d 992 (Fla App, 1988) (asportation by force and violence to a location that made it easier to commit rape and that decreased likelihood of detection supported a separate kidnapping conviction); *State v Folck,* 325 NW2d 368 (Iowa, 1982) (the evidence was sufficient for a separate kidnapping conviction where the complainant was taken to a secluded spot where the detection was unlikely and the remoteness substantially increased the risk of harm if the complainant sought to defend herself or escape); *State v Jackson,* 703 SW2d 30 (Mo App, 1985) (the kidnapping conviction was proper where the victim was taken from the parking lot to an abandoned home, thus increasing the defendant's ability to prolong the assault because of the decreased chance of being observed and because it was more difficult for the complainant to escape); *Tucker,* n 22 *supra* (a kidnapping charge was proper where the defendant dragged the victim down river and under a bridge so that

tence of these additional dangers counsels our
conclusion that no juror, properly instructed, could
determine that complainant's asportation was
solely incidental to first-degree CSC.

C

We conclude, therefore, that the crime of forci-
ble-confinement kidnapping both preceded and was
complete well before defendant duped complainant
into entering his motel room.[24] Defendant's forcible
confinement of complainant in his vehicle was
beyond a reasonable doubt incidental to the com-
mission of kidnapping. It is clear from these facts
that no juror, properly instructed, could have con-
cluded that the extended confinement here was
merely incidental to commission of CSC. Accord-
ingly, it is also clear that defendant was not

passersby would not witness or hinder the commission of rape); *State
v Woodall*, 182 W Va 15; 385 SE2d 253 (1989) (a separate kidnapping
conviction was proper where the victims were driven miles from the
place of abduction to a deserted area, thus increasing the risk of
greater physical harm). Again, these cases are cited for illustration
only. Nothing herein shall be construed as indicating that this Court
has adopted the findings—asportation or otherwise—of these foreign
courts.

[24] One Michigan Court, and at least two foreign courts, have con-
cluded that, under certain facts, the crime of kidnapping may be
completed before a CSC offense occurs. See, e.g., *People v Santana*, 139
Mich App 484; 363 NW2d 702 (1984) (the crime of kidnapping is
separate from, and completed before, the commission of rape where
the defendants forced the complainant into the car, drove away, and
subsequently refused to let her leave before the rape); *State v Bur-
chett*, 107 Ariz 185; 484 P2d 181 (1971) (where the defendant lured
the child away from the yard and into the car, then drove to a nearby
alley where the rape took place, the crime of kidnapping preceded
and was complete before the rape took place); *State v Ware*, 63 Ohio
St 2d 84; 406 NE2d 1112 (1980) (separate convictions for kidnapping
and rape were proper where the defendant deceptively induced the
victim to accompany him to a home where she was promised use of
telephone, and where the complainant was later forced to move to
another area of the home for purposes of rape). We note these two
foreign cases for purposes of illustration only. Nothing in this citation
shall be construed as indicating that this Court has adopted the
findings—asportation or otherwise—of these foreign courts.

prejudiced by the erroneous jury instruction and, therefore, that the trial court's instructional error was harmless.

For these reasons, the Court of Appeals decision should be reversed and the jury verdict reinstated.

MALLETT, J., concurred with BRICKLEY, J.

BOYLE, J. (*concurring*). I concur in the result reached by the lead opinion, reversing the decision of the Court of Appeals. I write separately because the lead opinion, like the majority of the panel of the Court of Appeals, erroneously assumes that every charge of forcible-confinement kidnapping necessarily requires inclusion of the "merely incidental asportation" requirement articulated for the guidance of trial judges by the committee on standard jury instructions for criminal cases. Our precedent does not require the prosecution to prove a negative, that is, that movement was not merely incidental to another crime. What is required is proof of a positive act that is not "merely incidental" to another offense.

There was no error in the trial judge's instruction to the jury in this case. The judge instructed the jury on the duty to find that the prosecution had proven all the essential elements of both forcible-confinement, false-imprisonment kidnapping and first-degree criminal sexual conduct beyond a reasonable doubt, including the requirement under the kidnapping charge that the victim be forcibly moved for the purpose of kidnapping. As has been ably pointed out by the lead opinion, if such asportation element was found to be proven to the satisfaction of the jury, as it was, the movement was more than just incidental to the commission of CSC, and established that "the crime of forcible-confinement kidnapping both preceded

and was complete well before defendant duped complainant into entering his motel" where the commission of the CSC occurred. *Ante* at 245.

Where two crimes charged are coequal offenses, and it is beyond question that any movement proven was extensive and occurred well in advance of the commission of the CSC, the concerns that dictate the instruction that the jury find an asportation not merely incidental to an underlying crime[1] are not present. If the proofs of the prosecution and the charge to the jury require a finding of a significant movement for the purpose of abduction and kidnapping, there is no error in tailoring the standard jury instruction and choosing not to give the "merely incidental" language to the jury. If the facts, as alleged, are found by the jury to have occurred beyond a reasonable doubt, the movement is, as a matter of law, not merely incidental to a separate, coequal charge of forcible-confinement, false-imprisonment kidnapping.

I

This Court first engrafted the asportation requirement onto forcible-confinement kidnapping in *People v Adams,* 389 Mich 222, 230; 205 NW2d 415 (1973), in order to distinguish the common-law misdemeanor of false imprisonment and prevent overcharging.[2] In that case, we also adopted the rule from New York and California jurisprudence that "the movement element must not be merely incidental to the commission of a lesser underlying

---

[1] Except in the case of murder, extortion, or taking a hostage.

[2] We have previously held that the addition of the asportation element is only necessary to cure constitutional infirmities in the forcible-confinement portion of our kidnapping statute, not those sections regarding secret confinement, forcible seizure, or forcible confinement with intent to secretly confine. *People v Wesley,* 421 Mich 375, 391; 365 NW2d 692 (1984).

crime, i.e., it must be incidental to the commission of the kidnapping." *Id.* at 236. The asportation element and incidental asportation rule were adopted to provide an alternative to true movement and were " 'designed to prevent gross distortion of lesser crimes into a much more serious crime by excess of prosecutorial zeal.' " *Id.* at 232, quoting *People v Miles,* 23 NY2d 527, 540; 297 NYS2d 913; 245 NE2d 688 (1969). In discussing the rationale for New York's version of the incidental asportation rule, the Court of Appeals of that state explained:

> [I]n any robbery, there is a restraint of "false imprisonment" and in every rape there is a similar restraint and often removal in some limited sense. It is this kind of factual merger with the ultimate crime of the preliminary, preparatory, or concurrent action that the rule is designed to recognize, and thus prevent unnatural elevation of the "true" crime to be charged. [*Id.* at 539.]

The New York court went on to caution, however, that

> the *Levy-Lombardi* [3] [incidental asportation] rule was designed to prevent gross distortion of lesser crimes into a much more serious crime by excess of prosecutorial zeal. *It was not designed to merge "true" kidnappings into other crimes merely because the kidnappings were used to accomplish ultimate crimes of lesser or equal or greater gravity. Moreover, it is the rare kidnapping that is an end in itself; almost invariably there is another ultimate crime.* [Emphasis added.]

In the present case, the facts presented by the

---

[3] *People v Levy,* 15 NY2d 159; 256 NYS2d 793; 204 NE2d 842 (1965); *People v Lombardi,* 20 NY2d 266; 282 NYS2d 519; 229 NE2d 206 (1967).

prosecution and accepted by the jury do not present the kind of factual merger or preparatory action that requires a merely incidental instruction to guard against overcharging. The kidnapping that occurred was a "true" kidnapping, committed and completed before the CSC, although used to accomplish the ultimate crime of sexual assault.[4]

In *People v Barker*, 411 Mich 291, 296; 307 NW2d 61 (1981), the Court expanded the incidental asportation rule of *Adams* to apply when two coequal offenses are charged. The issue in *Barker* was whether it was proper to affirmatively instruct the jury that it could satisfy the asportation element necessary for kidnapping by finding movement "merely" incidental to another offense when the punishment for both offenses was equal. While the Court did not focus on whether the crime charged was forcible-confinement kidnapping as it did in *Adams*,[5] we again acknowledged that asportation was an alternative to other forms of kidnapping, *id.* at 298, and we again addressed the possibility of "excessive prosecutorial zeal."[6] In *Barker*,

---

[4] The dissent attempts to broaden this rationale for the incidental asportation rule. The concern in the cases establishing the rule was that the prosecutor might charge the more serious crime of kidnapping, instead of a lesser crime warranted by the evidence, by literal application of the kidnapping statute. See *Adams, supra*. There was no concern that proof of kidnapping could be used to improperly supply an essential element of another charge.

[5] We have questioned that deviation in the past, stating that "[i]n its holding in *Barker,* the Court seems to have departed from the intellectual underpinning of *Adams,* the need to prevent prosecutorial overcharging." *Wesley,* n 2 *supra* at 386, n 4.

[6] We quoted with approval from the Court of Appeals in *Barker:*

"We are of the opinion that the thrust of *Adams* is not limited solely to the prevention of the distortion of lesser offenses into those more serious, but to further prevent one crime from being transformed into two (e.g., kidnapping and rape), and that those decisions holding *Adams* applicable to coequal offenses represent the better reasoned approach.

the manifestation of that zeal was the possibility that a prosecutor could transform one offense into two by using the incidental movement from one coequal charge to fulfill the asportation requirement of a second offense of kidnapping.[7]

"It may be argued that a danger perceived by *Adams,* that of excessive prosecutorial zeal, is not as prevalent where two capital offenses are involved, inasmuch as the result would be two concurrent sentences of up to life instead of one.

"While it is certainly true that multiple sentences in Michigan run concurrently, it is also true that the conversion of a single capital offense into two capital offenses by charging incidental movement of the victim results in not only perhaps an additional concurrent sentence up to life, but also in two chances for conviction instead of only one. It is entirely possible for the jury to acquit on the charge underlying the kidnapping but convict on the latter. For this reason, the danger of 'excessive prosecutorial zeal' is equally present." [*Barker, supra* at 299, n 4, quoting *People v Barker,* 90 Mich App 151, 156-157; 282 NW2d 266 (1979).]

[7] There is no suggestion in *Barker* of a double jeopardy concern. Nor is there any justification for such concern in the present case. The Double Jeopardy Clause only serves as a restraint on the prosecutor and the courts, it does not limit the punishment authorized by the Legislature. *People v Robideau,* 419 Mich 458; 355 NW2d 592 (1984). Frustration with the inability of some to appreciate the absence of a multiple-punishment component of the Double Jeopardy Clause has recently been expressed in *Dep't of Revenue of Montana v Kurth Ranch,* 511 US —; 114 S Ct 1937; 128 L Ed 2d 767, 791-792 (1994) (Scalia, J., dissenting):

Between [*Ex parte Lange,* 85 US (18 Wall) 163; 21 L Ed 872 (1874)], and our decision five terms ago in *United States v Halper,* 490 US 435 [109 S Ct 1892; 104 L Ed 2d 487] (1989), our cases often stated that the Double Jeopardy Clause protects against both successive prosecutions and successive punishments for the same criminal offense. . . . But the repetition of a dictum does not turn it into a holding, and an examination of the cases discussing the prohibition against multiple punishments demonstrates that, until *Halper,* the Court never invalidated a *legislatively authorized* successive punishment. The dispositions were entirely consistent with the proposition that the restriction derived exclusively from the due-process requirement of legislative authorization. Indeed, some cases expressed the restriction in precisely that fashion. See, e.g. [*Ohio v Johnson,* 467 US 493, 499, n 8; 104 S Ct 2536; 81 L Ed 2d 425 (1984)] ("protection against cumulative punishmen[t] is designed to ensure that the sentencing discretion of courts is

However, while it is error to instruct the jury that movement incidental to committing another offense *satisfies* the asportation element, it does not follow, as the Court of Appeals concluded, that the words "asportation . . . not merely incidental to"[8] must always be given.

In *People v Wesley*, 421 Mich 375, 391; 365 NW2d 692 (1984), we observed that the asportation requirement is applicable only to false-imprisonment kidnapping, not to the other forms of kidnapping incorporated in the Michigan statute. We explained that the interpolation of asportation as an element is not required for other forms of kidnapping because the elements of those other forms do not present the danger of overcharging or inappropriate punishment.[9] We specifically held,

confined to the limits established by the legislature"); *Albernaz v United States,* 450 US 333, 344 [101 S Ct 1137; 67 L Ed 2d 275] (1981) ("the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed"); *United States v DiFrancesco,* 449 US 117, 139 [101 S Ct 426; 66 L Ed 2d 328] (1980) ("No double jeopardy problem would have been presented in *Ex parte Lange* if Congress had provided that the offense there was punishable by both fine and imprisonment, even though that is multiple punishment"); *Whalen v United States,* 445 US 684, 688 [100 S Ct 1432; 63 L Ed 2d 715] (1980) ("the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized"); *id.* at 697 (Blackmun, J., concurring in judgment) ("The *only* function the Double Jeopardy Clause serves in cases challenging multiple punishments is to prevent the prosecutor from bringing more charges, and the sentencing court from imposing greater punishments, than the Legislative Branch intended") (emphasis in original); *Brown v Ohio,* 432 US 161, 165 [97 S Ct 2221; 53 L Ed 2d 187] (1977) ("The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments"). [Citations omitted; emphasis in original.]

[8] 200 Mich App 611, 617; 505 NW2d 41 (1993).

[9] The lead opinion's statement that "[i]t is well established that forcible-confinement kidnapping requires proof of asportation," *ante* at 224, is not to the contrary. As the lead opinion notes, although the

for example, that no movement is needed to establish the offense of forcible confinement with intent to secretly confine because the required element of a purpose to cause such secret confinement served to avoid any overbreadth concerns. *Id.* at 389-390.[10]

As is apparent, the purpose of the inclusion of the asportation element and incidental asportation rule in forcible-confinement, false-imprisonment kidnapping is to (1) prevent the literal application of the kidnapping statute to sweep so broadly as to allow the improper elevation of lesser crimes to capital offenses, and (2) guard against the use of movement incidental to another coequal offense, charged along with kidnapping, to fulfill the movement requirement of forcible-confinement kidnapping to improperly present the prosecution with two opportunities to convict the defendant of a capital offense, instead of one.

II

Our concern in the present case is not with the first danger. The jury was instructed that asportation was an element of kidnapping that had to be found beyond a reasonable doubt, and there has been no suggestion that a lesser crime, such as assault, has been surreptitiously elevated to a capital offense by allowing some incidental movement to satisfy the asportation requirement. The danger then, if any, presented by the absence of a "merely incidental" asportation instruction, is the possible use by the jury of movement incidental to

---

prosecution initially charged both forcible confinement and forcible confinement with intent to secretly confine, the jury was charged under only the former theory.

[10] The lead opinion seems to proceed under the erroneous assumption that any kidnapping charged with a coequal offense requires proof of separate asportation as an essential element. See *Wesley, supra.*

the coequal charge of CSC to fulfill the asportation element of the kidnapping offense. As is true of the first possible hazard, on these facts, any such peril is nonexistent.

Evidence of extensive movement was presented at trial. According to testimony of the complainant,[11] she joined the defendant voluntarily at approximately 1:40 A.M. They then proceeded to a party store to purchase alcohol, a gas station to make a phone call, and a parking lot to smoke marijuana. The complainant testified that she was no longer accompanying the defendant willingly after leaving the party store, that she tried to flee the moving vehicle once and was struck by the defendant before arriving at his friend's home, that she later fled down the road from the friend's home, and that defendant caught her, struck her, and forced her back into the car, all before proceeding to the motel where the sexual assault occurred.

While this testimony did not absolve the prosecutor of the duty to prove the element of movement for the purpose of kidnapping beyond a reasonable doubt, it did present ample evidence of movement independent of the ultimate commission of CSC.[12] Indeed, the evidence is so overwhelming that the lead opinion finds that "[c]omplainant's

[11] The defendant chose not to testify at trial.

[12] While the complainant's credibility was questioned by defense counsel on cross-examination, it is apparent from the jury's finding that asportation for the purpose of kidnapping occurred that this attempt was unsuccessful.

It defies common sense to hypothesize, as the dissent attempts to do, that in finding asportation beyond a reasonable doubt, the jury may have disbelieved all of complainant's testimony regarding the events before the sexual assault and totally based its decision regarding this element on movement incidental to the attack. The jury was instructed regarding two separate offenses and made two separate findings. In this regard, it is revealing to note that defense counsel raised no objection to the instructions to the jury when specifically asked at trial, and even failed to raise the issue on appeal.

forcible confinement to defendant's vehicle *was*
asportation incidental exclusively to kidnapping,
and no juror examining this record evidence
against the backdrop of proper instructions on
asportation could have concluded otherwise." *Ante*
at 242-243 (emphasis in original). The question, of
course, is why, if there was such movement, it was
error to eliminate the merely incidental language
from the proposed standard jury instruction.

The jury was instructed that "the defendant
must have forcibly moved or caused the victim to
be moved from one place to another for the pur-
pose of abduction and kidnapping."[13] This asporta-
tion *for* the purpose of kidnapping is the essential
element the jury must find, not asportation *not
merely incidental to* another offense charged. See
*Adams* and *Barker, supra.*

Although "[j]urors are the sole judges of the
facts and neither the trial court nor this court can
interfere with their exercise of that right," *People
v Miller,* 301 Mich 93, 100; 3 NW2d 23 (1942),
where the proofs as presented indicate completed
offenses, it is *not* a usurpation of the jury's func-
tion for the trial court to charge movement for the
purpose of kidnapping. Where the proofs raise no
question of fact or law regarding whether a false-
imprisonment kidnapping is merely incidental to
another crime, an instruction that the jury must
find forcible movement for the purpose of kidnap-
ping is a correct statement of law.

Under the particular facts of a given case, the

[13] The defendant was originally charged with forcible *or secret-
confinement* kidnapping. As I have noted, secret-confinement kidnap-
ping requires no proof of an asportation element, there being no
concern for overbreadth in interpretation of that portion of the
statute. See n 2. The judge in the present case also originally stated
the charge in the alternative in his instructions, but then chose only
to describe to the jury the elements of forcible-confinement kidnap-
ping.

dangers that require the instruction that the as-
portation element be found independent of its
occurrence in the commission of another crime are
absent. In the present case, the jury found asporta-
tion beyond a reasonable doubt on the basis of
evidence presented by the prosecution that the
lead opinion accurately characterizes as "over-
whelming and unrefuted record evidence indicat-
ing that most of complainant's involuntary con-
finement and asportation was incidental to kidnap-
ping, and not movement merely for purposes of
committing first-degree CSC . . . ." *Ante* at 239. In
short, if the jury was sufficiently convinced that
the evidence presented at trial proved the element
of asportation, this finding precluded concern that
such evidence could be incidental to another co-
equal charge.

In the present case, an experienced trial court
judge correctly recognized that because of the
absence of the danger guarded against by the
incidental asportation rule, the standard jury in-
struction was inapplicable and properly tailored
the standard instruction to conform to the proofs
in a form that clearly charged the elements that
must be found beyond a reasonable doubt.[14] Any
incidental asportation instruction was superfluous,
potentially confusing, and properly eliminated.

III

Movement is a necessary element of forcible-
confinement, false-imprisonment kidnapping, and

[14] As noted by the lead opinion, the Criminal Jury Instructions are
not officially sanctioned or mandated by this Court, and may be
modified or disregarded where appropriate. "Their use is not required,
and trial judges are encouraged to examine them carefully before
using them, in order to ensure their accuracy and appropriateness to
the case at hand." *People v Petrella*, 424 Mich 221, 277; 380 NW2d 11
(1985).

the judge properly instructed the jury in respect to that fact. If such asportation was found on the facts presented at trial, however, there existed no reason for concern regarding the possibility of elevating a lesser offense to a capital crime or borrowing asportation incidental to another offense to satisfy that element of the kidnapping charge. Because the jury was correctly instructed, I agree that the Court of Appeals decision should be reversed and the jury's verdict should be reinstated.

RILEY and GRIFFIN, JJ., concurred with BOYLE, J.

CAVANAGH, C.J. (*concurring in part and dissenting in part*). I find that the instructional error was harmless under both Justice BRICKLEY's and Justice LEVIN's harmless-error standards. I endorse Justice LEVIN's harmless-error standard as the proper one to be applied to the type of error that occurred in this case. I also contend that the defendant's double convictions violate the constitutional principle of double jeopardy.

Specifically, I concur with Justice BRICKLEY that, under the standard that he applies for harmless error, the error in this case may be deemed harmless. However, I dissent from Justice BRICKLEY's opinion because I believe that he applies the wrong mode of analysis for assessing the particular error that occurred here. I prefer the analytical framework that Justice LEVIN advocates—a framework that I interpret as a distinctive harmless-error standard to be applied in cases in which the trial court has failed to properly instruct the jury on an essential element of a crime.

While I endorse the harmless-error standard that Justice LEVIN champions, I disagree with the conclusion that Justice LEVIN makes when he

applies that standard to the error in the instant case, i.e., Justice LEVIN's finding that the deficient instruction was not a harmless error. If an appellate court focuses on what this jury actually found, as Justice Scalia directs it to do in *Sullivan v Louisiana,* 508 US —; 113 S Ct 2078; 124 L Ed 2d 182 (1993), I believe that the appellate court could properly conclude that, on the basis of the special circumstances of this case, the jury necessarily found the uninstructed element of asportation in furtherance of the kidnapping and not merely incidental to the criminal sexual conduct. See also *Pope v Illinois,* 481 US 497, 504; 107 S Ct 1918; 95 L Ed 2d 439 (1987) (Scalia, J., concurring).

The trial judge instructed the jury that it had to find that the defendant " 'must have forcibly moved or caused the victim to be moved from one place to another for the purpose of abduction and kidnapping.' " *Ante* at 230-231. The undisputed asportation evidence that was actually argued to the jury pertained to movement that was clearly incidental exclusively to the kidnapping. In light of the guilty verdict, the jury had to have found that asportation transpired. Applying Justice Scalia's harmless-error framework, as it was explicitly explained by the United States Court of Appeals for the Ninth Circuit in *Martinez v Borg,* 937 F2d 422, 425 (CA 9, 1991), I find that "no rational jury could have made those findings [the ones that we know the jury made on the basis of the instructions that were actually given] without also finding [the element of independent asportation]."

To arrive at this conclusion does not require speculation on the part of the appellate court. Certainly, it is possible that the jury's asportation finding was based on the movement from the car to the motel room, or from the floor to the bed, as Justice LEVIN hypothesizes in his dissent at 274.

However, in view of the particular nature of the asportation evidence that in fact was argued to the jury, I consider such a scenario to be highly unlikely and assert that the jury necessarily found asportation unique to the commission of the kidnapping. Accordingly, an appellate court could accurately rule that "[t]he [instructional] error is harmless because it is 'beyond a reasonable doubt,' *Chapman v California,* 386 US 18, 24 [87 S Ct 824; 17 L Ed 2d 705] (1967), that the jury found the facts necessary to support the conviction." *Carella v California,* 491 US 263, 271; 109 S Ct 2419; 105 L Ed 2d 218 (1989) (Scalia, J., concurring).

As a final point, and one that I acknowledge neither the majority nor the dissent directly addresses, I write to object to the fact that the defendant in this case has been convicted of *both* first-degree criminal sexual conduct by penetration under circumstances involving the commission of another felony, and kidnapping—where kidnapping serves as the other felony. As I have indicated on prior occasions, I regard the imposition of separate punishments under these circumstances to be a violation of the constitutional prohibition against double jeopardy, specifically the prohibition against multiple punishments for the same offense. See *People v Sturgis,* 427 Mich 392, 413; 397 NW2d 783 (1986) (Cavanagh, J., dissenting); *People v Robideau,* 419 Mich 458, 504-513; 355 NW2d 592 (1984) (Cavanagh, J., dissenting). I find it necessary to expressly reiterate my view that a legislature's authorization of successive punishments for the same offense does not dispose of the question whether a double jeopardy violation has occurred " '[s]ince the Double Jeopardy Clause limits the power of all branches of government, *including the legislature . . . .* ' " *Robideau* at 510, quoting *Missouri v Hunter,* 459 US 359; 103 S Ct

673; 74 L Ed 2d 535 (1983) (Marshall, J., dissenting) (emphasis added). Moreover, as I also pointed out in *Robideau,* I find that "the [Michigan] Legislature has not clearly and unequivocally authorized punishment for both first-degree criminal sexual conduct based on sexual penetration under circumstances involving any 'other felony' and the 'other felony.'" *Id.* at 511.

In conclusion, I concur in the result reached in Justice BRICKLEY's opinion, and the analyses set forth in parts II and III of that opinion; and I join the analyses set forth in parts I, II, and III of Justice LEVIN's dissent.

LEVIN, J. *(dissenting).* I agree with the signers of the lead opinion and the Chief Justice that the trial court erred in failing to instruct the jury that to consider the defendant, Derrick Terrance Vaughn, guilty of forcible-confinement kidnapping, it had to find beyond a reasonable doubt that Vaughn moved the victim and that that movement was not merely incidental to the commission of the underlying CSC charge.

The failure to instruct on an essential element cannot be deemed harmless on the basis that a properly instructed jury surely would have found the uninstructed element. Even if such an instructional error could be considered harmless under some circumstances, the omission of the asportation instruction in this case was not harmless.

I

Vaughn claims that the trial court's failure to instruct the jury on all the essential elements of kidnapping permitted the jury to convict him without finding every essential element and thereby relieved the prosecution of its constitutionally

mandated burden of proving the essential elements beyond a reasonable doubt.[1]

Assuming the rule set forth in *People v Woods*, 416 Mich 581; 331 NW2d 707 (1982), and in MCL 769.26; MSA 28.1096—that a court may not reverse on the basis of an instructional error absent a finding of prejudice—controls where the trial court failed to instruct on an essential element,[2] we are not free to follow that rule if it provides less protection of a defendant's due process rights

[1] See *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970) (the prosecution must prove "every fact necessary to constitute the crime with which [the defendant] is charged" beyond a reasonable doubt); *Carella v California*, 491 US 263, 265; 109 S Ct 2419; 105 L Ed 2d 218 (1989) (jury instructions that relieve the state of the burden of proving the essential elements of a crime "violate a defendant's due process rights"); *Martinez v Borg*, 937 F2d 422, 423 (CA 9, 1991) (failure to instruct on an essential element "is constitutional error because the jury did not have the opportunity to find each element of the crime beyond a reasonable doubt"); *Rael v Sullivan*, 918 F2d 874, 875 (CA 10, 1990) ("We agree with those cases cited by appellant holding that a complete failure to instruct on an essential element of an offense violates the right to due process").

[2] There are a number of decisions by this Court that indicate that a failure to instruct on an essential element can never be harmless error. In *People v Butler*, 413 Mich 377, 387; 319 NW2d 540 (1982), this Court said:

> A judge's incorrect recitation of the law undermines the purpose of jury instructions. Rather than conforming the jury's factfinding to the law, an incorrect instruction poses the unacceptable risk of convicting a defendant of a crime unknown to the laws of Michigan. It is not, therefore, surprising that this Court will scrutinize the contested instruction closely and, *upon finding that a judge failed to inform a jury of the true nature of the offense charged, will not countenance claims of "harmless error" but will reverse. People v Reed*, 393 Mich 342, 351; 224 NW2d 867 (1975).

See also *People v Hearn*, 354 Mich 468, 473; 93 NW2d 302 (1958) ("We are in accord with appellant's contention that this Court can *and should* reverse when the charge to the jury omits a legally essential ingredient, even though no request was made by defendant") (emphasis added); *People v Kanar*, 314 Mich 242, 252; 22 NW2d 359 (1946); *People v Hernandez*, 84 Mich App 1, 10; 269 NW2d 322 (1978) ("Even though there was no request for this instruction or any objections to the ones given, reversible error is committed if the judge fails to instruct the jury on an essential element of the offense . . .").

than is required under the Fourteenth Amendment.[3]

## II

The issue whether a trial court's failure to instruct on all the essential elements of a crime can be considered harmless error was considered in *Rose v Clark,* 478 US 570; 106 S Ct 3101; 92 L Ed 2d 460 (1986), *Pope v Illinois,* 481 US 497; 107 S Ct 1918; 95 L Ed 2d 439 (1987), and *Carella v California,* 491 US 263; 109 S Ct 2419; 105 L Ed 2d 218 (1989).

In *Rose,* the trial court erroneously instructed the jury that a killing is presumed to have been done maliciously. The United States Supreme Court held that this instructional error was subject to harmless-error review. The Court emphasized that the presumption did not prevent the jury from considering every element of the crime because "the jury . . . was clearly instructed that it had to find respondent guilty beyond a reasonable doubt as to *every element* of both first- and second-degree murder," *id.* at 579. The Court added that the erroneous instruction was not the equivalent of a directed verdict for the state because "[w]hen a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt." *Id.* at 580.

In *Pope,* the trial court instructed the jury that the literary, artistic, political, or scientific value of allegedly obscene material should be determined by reference to how that material would be viewed

[3] *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). Professor Meltzer has recently described *Chapman* as holding "that federal law often demands that state courts find errors prejudicial." Meltzer, *Harmless error and constitutional remedies,* 61 U Chi L R 1 (1994).

by ordinary adults in the entire State of Illinois. The United States Supreme Court held that the value of a work should be determined under a "reasonable person" standard that is not specific to any city or state, and therefore found the instruction to be erroneous.

The Court rejected the defendants' claims that they were automatically entitled to a new trial because the jury had not found them guilty of an essential element of the crime of selling obscene materials, namely, that the materials lacked serious literary, artistic, political, or scientific value. The Court compared this case to *Rose,* and said:

> [I]n the present cases the jurors were not precluded from considering the question of value: they were informed that to convict they must find, among other things, that the magazines petitioners sold were utterly without redeeming social value. While it was error to instruct the juries to use a state community standard in considering the value question, if a reviewing court concludes that no rational juror, if properly instructed, could find value in the magazines, the convictions should stand. [*Id.* at 503.]

*Carella* concerned a California jury instruction that told jurors that a person who has leased or rented a vehicle and wilfully failed to return it within five days after it is due to be returned shall be presumed to have embezzled the vehicle. The Court first held that the instruction was unconstitutional because it "subvert[ed] the presumption of innocence accorded to accused persons and also invade[d] the truth-finding task assigned solely to juries in criminal cases." *Id.* at 265. The Court held that the instructional error was subject to harmless-error analysis even though it "foreclosed independent jury consideration of whether the

facts proved established certain elements of the
offenses with which Carella was charged." *Id.* at
266. The Court remanded for a determination of
"whether no rational jury could find the predicate
acts but fail to find the fact presumed." *Id.* at 267.

Justice Scalia filed a concurring opinion in
which he suggested how harmless-error review
should be conducted when the trial court has
given an instruction with an impermissible man-
datory presumption. He first highlighted the prob-
lem with harmless-error review in the mandatory
presumption context: the jury has arguably failed
to make any finding on the fact that it was in-
structed to presume. He next explained that where
a jury has failed to make a factual finding, a
reviewing court may not find that element itself,
no matter how overwhelming the evidence of that
element may be. Justice Scalia, therefore, sug-
gested that an appellate court could only review
for harmless error in the mandatory presumption
context by scrutinizing the jury instructions that
were actually given in an attempt to determine
whether the *jury* itself found the essential ele-
ment. He said that an appellate court could find a
mandatory presumption instruction harmless
when "the predicate facts relied upon in the in-
struction, or other facts necessarily found by the
jury, are so closely related to the ultimate fact to
be presumed that no rational jury could find those
facts without also finding that ultimate fact, mak-
ing those findings is functionally equivalent to
finding the element to be presumed." *Id.* at 271.

After *Rose, Pope,* and *Carella,*[4] the appellate
courts were in disagreement whether a trial

---

[4] Neither *Rose, Pope,* nor *Carella* settled the issue whether the
failure to instruct on an essential element of a crime can ever be
harmless error. In 1990, Justice White and Justice Marshall, dissent-
ing from the denial of certiorari in a case that presented this issue,
noted that "a conflict of authority exists concerning the availability of

court's failure to instruct on an essential element
of an offense could ever be harmless error. Those
courts that held that a failure to instruct could be
harmless error could not agree when such an error
would be deemed harmless.[5]

### III

The United States Supreme Court's recent deci-
sion in *Sullivan v Louisiana,* 508 US —; 113 S Ct
2078; 124 L Ed 2d 182 (1993), precludes an appel-
late court from holding that a failure to instruct
on an essential element is harmless because a
properly instructed jury surely would have found
the uninstructed element.

In *Sullivan,* the trial judge gave a faulty reason-
able-doubt instruction. The prosecutor conceded
that the instruction was improper, but he argued
that the error was harmless beyond a reasonable

harmless-error analysis in this situation," and they highlighted the
"depth of this conflict." *Teel v Tennessee,* 498 US 1007, 1008; 111 S Ct
571; 112 L Ed 2d 577 (1990) (White, J., dissenting from denial of
certiorari).

In 1991, the United States Court of Appeals for the Second Circuit
said that the question whether a trial judge's failure to instruct on an
essential element can ever be harmless "is a close one, we believe."
*United States v Smith,* 939 F2d 9, 11 (CA 2, 1991).

[5] Compare *Hoover v Garfield Heights Municipal Court,* 802 F2d 168,
177 (CA 6, 1986) (construing *Rose* as precluding the application of
harmless-error review where the trial court fails to instruct on an
essential element); *State v Olin,* 111 Idaho 516, 528-530; 725 P2d 801
(1986) (same); *State v Hamilton,* 30 Conn App 68, 77; 618 A2d 1372,
1377 (1993) (harmless-error review was not appropriate where the
trial court failed to instruct the jury on an essential element); *State v
Collins,* 88 Ohio App 3d 291; 623 NE2d 1269 (1993) (following *Hoover,
supra,* and refusing to apply a harmless-error analysis where the trial
court failed to instruct on an essential element) *with United States v
Kerley,* 838 F2d 932, 939 (CA 7, 1988) (failure to instruct clearly on
an essential element can be harmless error, and a particular error may
be harmless where the uninstructed element is "not [realisti-
cally] contestable and . . . barely if at all contested"); *Willard v
California,* 812 F2d 461 (CA 9, 1987) (failure to instruct on an
essential element can be harmless error and a particular error may
be harmless because the jury itself could be deemed to have made a
finding on an uninstructed element).

doubt. The Court held that harmless-error analysis
was not appropriate in this context, and, writing
for a unanimous Court, Justice Scalia made the
following observations concerning harmless-error
analysis:

> *Chapman* itself suggests the answer [whether
> this sort of error is subject to harmless-error anal-
> ysis]. Consistent with the jury-trial guarantee, the
> question it instructs the reviewing court to con-
> sider is not what effect the constitutional error
> might generally be expected to have upon a rea-
> sonable jury, but rather what effect it had upon
> the guilty verdict in the case at hand. . . . Harm-
> less-error review looks, we have said, to the basis
> on which "the jury *actually rested* its
> verdict." . . . The inquiry, in other words, is not
> whether, in a trial that occurred without the
> error, a guilty verdict would surely have been
> rendered, but whether the guilty verdict actually
> rendered in *this* trial was surely unattributable to
> the error. That must be so, because to hypothesize
> a guilty verdict that was never in fact rendered—
> no matter how inescapable the findings to support
> that verdict might be—would violate the jury-trial
> guarantee. . . .
> Once the proper role of an appellate court en-
> gaged in the *Chapman* inquiry is understood, the
> illogic of harmless-error review in the present case
> becomes evident. Since, for the reasons described
> above, there has been no jury verdict within the
> meaning of the Sixth Amendment, the entire
> premise of *Chapman* review is simply absent.
> There being no jury verdict of guilty-beyond-a-
> reasonable-doubt, the question whether the *same*
> verdict of guilty-beyond-a-reasonable-doubt would
> have been rendered absent the constitutional error
> is utterly meaningless. There is no *object,* so to
> speak, upon which the harmless-error scrutiny can
> operate. The most an appellate court can conclude
> is that a jury *would surely have found* petitioner
> guilty beyond a reasonable doubt—not that the

jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough. . . . The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty. . . . [Emphasis in the original.]

Insofar as the possibility of harmless-error review is concerned, the jury-instruction error in this case is quite different from the jury-instruction error of erecting a presumption regarding an element of the offense. A mandatory presumption —for example, the presumption that a person intends the ordinary consequences of his voluntary acts—violates the Fourteenth Amendment, because it may relieve the State of its burden of proving all elements of the offense. . . . But "[w]hen a jury is instructed to presume malice from predicate facts, *it still must find the existence of those facts beyond a reasonable doubt.*" [*Id.,* 113 S Ct 2081-2082. Emphasis added.]

The Court's opinion in *Sullivan* relied in part on Justice Stevens' dissenting opinion in *Pope v Illinois.* The portion of Justice Stevens' opinion on which the Court relied states:

An application of the harmless-error doctrine under these circumstances [where a defendant is denied a jury determination on an essential element] would not only violate petitioners' constitutional right to trial by jury, but would also pervert the notion of harmless error. When a court is asked to hold that an error that occurred did not interfere with the jury's ability to legitimately reach the verdict it reached, harmless-error analysis may often be appropriate. *But this principle cannot apply unless the jury found all of the elements required to support a conviction. The harmless-error doctrine may enable a court to remove a taint from proceedings in order to pre-*

*serve a jury's findings, but it cannot constitution-
ally supplement those findings. It is fundamental
that an appellate court (and for that matter, a
trial court) is not free to decide in a criminal case
that, if asked, a jury would have found something
that it did not find.* We have consistently rejected
the possibility of harmless error in these circum-
stances. [481 US 497-498. Emphasis added.]

The analysis in *Sullivan* and the Court's reli-
ance therein on Justice Stevens' opinion in *Pope*,
indicates that harmless-error review necessarily
assumes that the jury has found all the elements
of the crime beyond a reasonable doubt. Only after
a jury has made such findings, as Justice Scalia
explained, can a court intelligently ask whether
the guilty verdict would have been the same ab-
sent the error. Where the jury has not found all
the essential elements, an appellate court, in find-
ing harmless error because a properly instructed
jury surely would have found the uninstructed
element, would be making the very mistake that
Justice Scalia identified: it would be saying that
the jury would surely have found all the essential
elements.

Judge Procter Hug, Jr., of the United States
Court of Appeals for the Ninth Circuit recently
explained:

> This principle [that a court is not free to "hy-
> pothesize a guilty verdict that was never in fact
> rendered," *Sullivan v Louisiana*, 508 US —, —;
> 113 S Ct 2078, 2082; 124 L Ed 2d 182 (1993)] is
> equally applicable to a finding of an essential
> element of a crime—in this case, knowledge. In
> order to render a verdict of guilty, a jury must find
> all of the essential elements of the crime, under
> proper instructions. "[A] jury's verdict [of guilty]
> cannot stand if the instructions . . . do not re-
> quire it to find each element of the crime under a

proper standard of proof." Here, the jury did not make a finding of knowledge under a proper instruction. For appellate court judges to make this finding, by concluding what the jury would have found under a proper instruction, violates the defendant's Sixth Amendment right to have a jury actually make that finding. It is a structural error of constitutional dimension—the judges, instead of the jury, are making the finding essential to the verdict. *See Sullivan,* [508] US —, —; 113 S Ct 2082-2083. [*United States v Aguilar,* 994 F2d 609, 636 (CA 9, 1993) (Hug, J., dissenting), opinion withdrawn and superseded by 21 F3d 1475 (CA 9, 1994). Citations omitted.]

The Ninth Circuit recently accepted Judge Hug's view in an en banc opinion written by Judge Hug. *United States v Gaudin,* 28 F3d 943 (CA 9, 1994). The court said that "a judge may not direct a verdict against a defendant no matter how clear the evidence, *nor may an appellate court conclude under a harmless error doctrine that a jury 'would have' found an essential element of the crime if the jury did not do so under proper instructions. Sullivan,* [508] US —; 113 S Ct 2080, 2082." *Id.* at 949. (Emphasis added.)

A number of state courts have also concluded, on the authority of *Sullivan,* that they may not review the record to determine whether a jury would have found an essential element had it been properly instructed. In *State v Pyke,* 640 So 2d 460 (La App, 1994), the trial court instructed the jury that it could convict the defendant of attempted second-degree murder if it found that he had either a specific intent to kill or a specific intent to commit great bodily harm. In Louisiana, however, "a specific intent to do great bodily harm is not an element of the crime of attempted second degree murder." *Id.* at 462. Thus, in *Pyke,* there was no way of determining whether the jury had found all

the essential elements of the charge when it rendered a guilty verdict. It may have found an intent to do great bodily harm instead of an intent to kill.

After discussing *Sullivan's* teachings concerning harmless-error review, the court noted that it did not have the authority to deem an error harmless on the ground that a properly instructed jury surely would have found the uninstructed element:

> The "specific intent to inflict bodily harm" error in this case must be likened to the "beyond-a-reasonable doubt" error which the United States Supreme Court in *Sullivan* determined is "structural" and vitiates all the jury's findings.
>
> [Moreover,] determining what a reasonable jury might have done in instructional error cases *involving the definition of the crime* necessarily interjects speculation in the reviewing process and results in "the wrong entity judg[ing] the [defendant's guilt]." *Sullivan v Louisiana, supra.* [*Id.* at 465. Emphasis added.][6]

In *Vigil v State*, 859 P2d 659 (Wyo, 1993), the trial court failed to instruct the jury that recklessness was an essential element of involuntary manslaughter. The Wyoming Supreme Court reversed the defendant's conviction, even though the defendant had proffered the erroneous instruction, because "*inaccurate jury instructions on a specifically repealed statute, resulting in a possible conviction without proof beyond a reasonable doubt of all present elements of a crime, cannot be excused*

---

[6] See also *Esquibel v Rice*, 13 F3d 1430, 1435 (CA 10, 1994) (Brorby, J., dissenting). In this case, Judge Brorby concluded that the failure to instruct on an essential element of an offense was "plain constitutional error." He then said, "Applying the law of this Circuit, I would conclude the omission of an essential element from the jury charge precludes a harmless error analysis." The majority did not disagree with this statement by Judge Brorby. It did not find error, and therefore did not reach this issue.

*as invited error or harmless error. Sullivan v
Louisiana,* [508] US —; 113 S Ct 2078; 124 L Ed 2d
182 (1993)." 859 P2d 664 (emphasis added).

After *Sullivan,*[7] a failure to instruct on an essen-
tial element cannot be found to have been harm-
less on the basis that the jury surely would have
found the missing element had it been instructed
on the element.

IV

Although an appellate court may not hold that a
failure to instruct is harmless on the basis that
the jury surely would have found the element of
the offense on which it was not instructed an
appellate court may nevertheless find such an
instructional error to be harmless. In *Martinez v
Borg,* 937 F2d 422 (CA 9, 1991),[8] the United States
Court of Appeals for the Ninth Circuit analyzed
and adopted Justice Scalia's approach to harmless-
error review, and concluded that Justice Scalia
would permit a limited form of harmless-error
review where a trial court failed to instruct the
jury on an essential element of an offense.

The Ninth Circuit held that while an appellate
court may not make its *own* determination of what
a jury would have found had it been instructed on
all the elements of the offense, the court may

[7] Before *Sullivan,* the United States Court of Appeals for the Ninth
Circuit recognized that where a trial court has failed to instruct on an
essential element, an appellate court may not review the record to
determine whether a properly instructed jury would have found the
missing element. In *Martinez v Borg,* 937 F2d 422, 426 (CA 9, 1991),
where the trial court failed to instruct on an essential element, the
Ninth Circuit said, "we cannot speculate about how the jury would
have weighed this evidence [on the omitted element] had it been
instructed to do so." The Ninth Circuit specifically disapproved of
"reviewing the record to determine if the evidence overwhelmingly
establishes the defendant's guilt . . . ." *Id.* at 424.

[8] The Ninth Circuit has recently followed *Martinez. United States v
Mendoza,* 11 F3d 126 (CA 9, 1993).

review the record to determine whether " 'the *jury* found the facts necessary to support the conviction.' " 937 F2d 424, quoting *Carella, supra* (Scalia, J., concurring). The Ninth Circuit focused on the following language in Justice Scalia's concurring opinion in *Carella:*

> When the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding the element required to be presumed. [491 US 271.]

In the Ninth Circuit's words, if the appellate court determines that the jury found all the facts necessary to support the conviction, then " 'the erroneous instruction is simply superfluous: the jury has found, in *Winship's* words, "every fact necessary" to establish every element of the offense beyond a reasonable doubt.' " 937 F2d 424, quoting *Rose v Clark, supra.*[9]

---

[9] The Ninth Circuit cited its decision in *Willard,* n 5 *supra,* as an example of how an appellate court may determine that a trial court's failure to instruct on an essential element may be harmless. In *Willard,* the defendant was charged with robbery, and the prosecution argued, inter alia, that Willard was guilty as an aider and abettor. The trial court failed to instruct the jury that an essential element of aiding and abetting is a specific intent to commit the crime committed by the principal, and the jury convicted Willard of robbery. The Ninth Circuit held that the failure to instruct on specific intent was harmless because

> under the challenged instructions, the verdict represents a finding that Willard had knowledge of the gunman's unlawful purpose and that he was present at the robbery and aided, promoted, encouraged or instigated it. In our view, *the jury could not have found these elements of the crime without also finding that Willard had the intent of committing . . . the crime. [Id.* at 464.]

Thus, a failure to instruct may be found to be harmless error, according to the Ninth Circuit's reading of Justice Scalia's views, if the reviewing court can determine that "no rational jury would have made these findings [the ones that we know the jury made on the basis of the instructions that were actually given] without also finding" that the prosecution proved the uninstructed element beyond a reasonable doubt. 937 F2d 425. In short, a failure to instruct may be found to be harmless if the reviewing court can determine that the *jury* actually found the element on which it was not instructed.[10]

---

[10] See also *State v Orosco,* 113 NM 780; 833 P2d 1146 (1992). The New Mexico Supreme Court affirmed a conviction of criminal sexual contact of a minor although the trial court had failed to instruct the jury that the unlawfulness of the touching (i.e., that it was not for a medical or other proper purpose) was an element of the offense. The court said:

> The circumstances of these cases are important also because, to the extent we affirm the convictions, we do *not* in effect direct a verdict for the state or *make an independent finding* on the element of unlawfulness. Rather, we rest our decision on the basis that, under the undisputed evidence of unlawfulness in the cases and the facts upon which the juries relied to find that defendants committed the acts, *the juries themselves effectively determined the existence of the omitted element.* [*Id.,* 833 P2d 1152. Emphasis added; citations omitted.]

In *Orosco,* the defendant did not dispute that an unlawful touching occurred. He denied that he did the touching, and he denied knowing that another person was touching the child. The court held that the overwhelming evidence of an unlawful touching, the defendant's concession that an unlawful touching occurred and the jury's finding that the defendant touched the boy both combined to render the instructional error harmless.

The United States Court of Appeals for the Third Circuit applies this form of harmless-error review when a trial court fails to instruct on an essential element and when the defendant fails to object. See *United States v Anderson,* 859 F2d 1171, 1176 (CA 3, 1988) (finding failure to instruct on an essential element to be harmless where, in light of the jury's findings, "it is impossible to conclude that the *jury* may not have been in unanimous agreement that Anderson was guilty of three underlying drug crimes") (emphasis added).

V

The failure to instruct in this case was not harmless under the Ninth Circuit's approach. Assuming that the jury found all the elements necessary to establish the CSC charge and all the elements of kidnapping except the asportation, the jury would not have had to find that the prosecution had proven the asportation element of kidnapping.

The trial judge instructed on the kidnapping charge:

> These are the elements the prosecution must prove beyond a reasonable doubt: First, that the victim as described here must have been forcibly confined or imprisoned; second, the victim must have been so confined or imprisoned against her will and without lawful authority; next, during the course of such confinement the defendant must have forcibly moved or caused the victim to be moved from one place to another for the purpose of abduction and kidnapping.
>
> In determining whether or not movement was for the purpose of kidnapping, you may consider whether the movement was for a few feet or for a substantial distance, that at the time of the confinement the defendant must have intended to kidnap the victim; next, at the time of the confinement the defendant must have been acting willfully and maliciously, willfully and maliciously meaning the defendant intentionally confined the victim knowing such confinement to be wrong, and that he did so without legal justification or excuse.

As observed in the lead opinion, "the trial judge in effect permitted jurors to find the asportation element satisfied by movement merely incidental

to the commission of CSC."[11] The jury could have found that the asportation element of kidnapping was satisfied when Vaughn "caused [Smith] to be moved" from his car into the motel room, or it could have found that the asportation element was satisfied when Vaughn moved Smith from the floor to the bed in the motel room. Neither of these findings would establish the essential element of an asportation with independent significance. In sum, the findings that the jury must have made (on the basis of the instructions that were given) do not compel the conclusion that the jury must also have found an asportation of independent significance.[12] The failure to instruct on the asportation element in this case cannot be considered harmless.

## VI

Even under the view that an appellate court can find that a failure to instruct was harmless if it concluded that a properly instructed jury could not have reached a different verdict,[13] the failure to instruct was not harmless in this case. It is not clear that a properly instructed jury would have convicted Vaughn of kidnapping.

When the jury's findings are read in light of the instructions, it becomes clear that the jury found that Vaughn raped Holly Smith, that he confined

---

[11] *Ante*, p 234.

[12] Cf. *Martinez, supra*, 425-426 (the jury's finding that the defendant knew that the perpetrator's purpose in firing a gun at the officer does not necessarily mean that the jury found that the defendant, who was charged as an aider and abettor, shared the perpetrator's purpose); *United States v Mendoza*, n 8 *supra* (failure to instruct the jury that the firearm that the defendant was carrying had to be "in relation to" the underlying felony is not harmless error where the court could not rule out that the jury convicted without finding that firearm related to the felony).

[13] *Ante*, p 238.

her, and that he moved her some distance. The
jury obviously believed much of Smith's testimony.
It is noteworthy, however, that the portion of
Smith's testimony concerning the rape (and the
confinement in conjunction with the rape) was
corroborated, in large part, by forensic evidence
and other testimony. Holly's pelvis, vagina, and
external genitalia were swollen. The police found
nonmobile sperm in a vaginal smear taken from
Holly, and they found semen in the crotch of
Holly's panties. Vaughn could not be eliminated as
the source of the semen in the panties. Holly was
observed with bruises on her face that were consis-
tent with her claim that Vaughn hit her while
they were in the motel room.

The evidence of an asportation is not as strong
as the evidence of the sexual assault. The *sole*
evidence that Vaughn moved Holly against her
will was Holly's own testimony. Holly testified
that Vaughn drove her around while he was intox-
icated and that during various stops he hit her.

Holly's testimony, however, was not fully consis-
tent with her initial statements to the police or
with her testimony at the preliminary examina-
tion, and Vaughn's lawyer impeached her on a
number of aspects of the alleged asportation:

> —Holly testified that while she and Vaughn
> were in the parking lot of Awad's party store,
> she asked Vaughn to take her back to the bar
> and to take her home. Vaughn's lawyer dem-
> onstrated that, in her initial report to Ser-
> geant Elford, Holly mentioned only that she
> asked to be taken home at that point in the
> evening.
> —Holly testified that when she attempted to
> jump out of Vaughn's car, Vaughn pulled her
> back into the car and hit her in the face.
> Vaughn's lawyer then impeached Holly with

her preliminary examination testimony that after Vaughn pulled her back into the car (1) the car door hit her in the head, and (2) Vaughn did not do anything besides pull her back into the car (i.e., did not hit her).

—Holly testified that when she ran from Vaughn's car in the unfamiliar neighborhood, she knocked on only a single door in search of help. Vaughn's lawyer confronted Holly with her statement to Sergeant Elford that she had knocked on several doors.

—Holly testified that when Vaughn forced her back into his car after she ran away in the unfamiliar neighborhood, Vaughn hit her twice with a closed fist. Vaughn's lawyer impeached Holly with her statement to Sergeant Elford that mentioned only that Vaughn grabbed her around the neck and in which Holly did not say anything about being hit with a closed fist.

Not only was Holly Smith's testimony not "uncontested,"[14] it was *successfully* contested on a number of details.

I do not mean to suggest that the evidence was not sufficient to support a kidnapping conviction. If a properly instructed jury chose to believe the testimony of Holly Smith, it surely could have returned a verdict of guilty of kidnapping.

The uncorroborated testimony of Holly Smith—the sole evidence concerning the asportation and the force involved—is not overwhelming evidence that Vaughn moved her independently of the sexual assault. It is not clear that a jury could not have disbelieved the portion of Holly's testimony that led up to the rape. An *Adams*[15] asportation instruction was necessary.

---

[14] Boyle, J., *ante,* pp 253-254.

[15] *People v Adams,* 389 Mich 222; 205 NW2d 415 (1973).

Contrary to the view expressed in the concurring opinion, the failure to instruct concerning "incidental movement" instruction could have converted a lesser offense into a more serious offense.[16] The kidnapping charge lodged against Vaughn was the predicate felony underlying the CSC I charge against him. Thus, Vaughn could only have been convicted of CSC I if the jury properly found that he had committed the offense of kidnapping.[17] If the jury erroneously found an asportation and convicted Vaughn of kidnapping—on the basis of the movement from the car to the motel—then its verdict on the CSC I charge would also have been tainted. And, if the jury found only that Vaughn moved Holly Smith from the car to the motel, he should have been convicted of CSC III, not CSC I. The failure to give the *Adams* asportation instruction could have led to Vaughn's conviction on a more severe charge.

[16] BOYLE, J., *ante,* p 252.

[17] The only theory of CSC I on which the jury was instructed concerned the commission of forced penetration in conjunction with an underlying felony. Though other theories of CSC I may have been applicable in this case, they were not contained in the judge's instructions.